## SAMPLES *v.* THE CITY OF ATLANTA.

Although a traveler may know that because of the defective construction of a public bridge in a city there is some danger in driving over it, still he may recover from the city for injuries sustained in so doing, if it clearly appears that the danger was not obviously of such a character that driving over the bridge would necessarily amount to a want of ordinary and reasonable care and diligence, and if it also appears that in driving over the bridge the plaintiff did in fact observe such care and diligence. In such case the mere fact of driving over the bridge would not of itself authorize a finding that the plaintiff by so doing consented to the injuries thereby occasioned Consequently, it was error to charge as follows: "If you believe from the evidence that the plaintiff was acquainted with the bridge, and knew of the danger of driving over it, and nevertheless did so, you should find that he consented

to the injury, and, therefore, that he cannot recover; for it is a principle of law that no man can recover damage from another where he consented to his injuries."

November 26, 1894.

Action for damages.    Before Judge VAN EPPS.    City court of Atlanta.    March term, 1894.

P. F. SMITH and GAINES & ETHERIDGE, for plaintiff.

J. A. ANDERSON and FULTON COLVILLE, for defendant.

LUMPKIN, Justice.

In the case of *Bentley* v. *The City of Atlanta*, 92 *Ga.* 623, this court held that although the McDaniel street bridge, which crosses over the tracks of the East Tennessee, Virginia & Georgia Railway Company, had been raised by the railway company, the duty of keeping this street free from a permanent or long-continued nuisance devolved primarily upon the municipal government, and that consequently the city was liable if, by the improper construction of that bridge, it amounted to a public nuisance and was unsafe for general use.

In the case at bar, the plaintiff was injured in an attempt to drive across this identical bridge. Under the facts in evidence, the city is to be treated as being in the attitude of inviting the public to use this bridge as a part of McDaniel street, which was a very public and much traveled thoroughfare. It appears that the city permitted the bridge to remain open for general travel, and that its condition, shape and general structure had been the same for some considerable time prior to the plaintiff's injury. In legal contemplation, therefore, the city was keeping and maintaining the bridge in this condition at the time the injury to the plaintiff occurred. He had crossed the bridge with his wagon the day before. This was his only opportunity of knowing what its condition was. The bridge, as to strength, surface, and condition of repair, seems to have been unobjectionable. The only complaint of it in the present case was, that

there was a considerable incline in the approach forming one end of it, which made the descent quite steep and, to a certain extent, dangerous. It was because of this abrupt declivity that the bed of the plaintiff's wagon was thrown out of place and precipitated upon his team, causing him to be thrown out and hurt.

There was a verdict for the defendant, and the plaintiff assigns error upon the overruling of his motion for a new trial. We shall discuss none of the numerous grounds contained in this motion, save that which complains that the charge copied in the head-note was erroneous and unwarranted by the facts in evidence.

Taken in its literal sense, this charge is open to the criticism that it states a principle of law not pertinent nor applicable to the facts of this case. Surely, a man who is merely negligent in voluntarily pursuing a course which he knows to be attended with danger cannot be said to *consent* to such injuries as may follow, however much reason there might be to conclude that he *assumed the risk* of sustaining injury. However, we are not inclined to be hypercritical, and will take it for granted that our distinguished brother of the trial bench never really intended that the language he employed should be accredited with its usual and literal significance. We think it the more probable that he meant by this charge to state the well known rule of law that one who voluntarily attempts a rash, imprudent and dangerous undertaking is to be presumed to have assumed the risk incidental thereto, and cannot afterwards complain if he is injured. Giving to the charge this construction, its vice lies in its assumption that if the plaintiff knew of the danger of driving over the bridge, attempting to do so was, *per se*, negligence on his part amounting to a want of ordinary diligence. We do not understand this to be a correct exposition of the law applicable to the facts of this case. The plaintiff's acquaintance with the

bridge was very slight indeed, and his knowledge of the danger of using it must have been correspondingly slight. Besides, it must not be forgotten that this was a public bridge forming a part of a public street in a city, over which all people having occasion to use the street at that point were expected to cross; there was no warning of any sort that it was unfit or unsafe for travel; and there was no appearance of danger about it, save only the steepness of the grade at one of its ends. In view of these facts, we entertain no doubt at all that the charge cut strongly against the plaintiff. There is greater or less danger attending the use of many public bridges and highways. Sometimes the danger is very slight indeed—so slight as to be of but little consequence. Again, the danger is somewhat greater, and more carefully to be guarded against by one who takes the proper care for his own safety; and still again, the danger may be so very great and apparent that the only proper way to shun it would be to avoid altogether coming within its reach. Between the extremes there is every conceivable degree and kind of danger. Where the danger is exceedingly small and trivial, it may not be at all negligent to disregard it; where it is exceedingly great and obvious, it would be negligence *per se* to incur the hazard of being injured by it. In other cases, it would be open to question whether incurring such possible or probable hazard would be consistent with ordinary care; and in cases of this kind, the question of contributory negligence is one for determination by the jury. The case at bar belongs to the class just indicated, and the court could not properly, as matter of law, conclusively determine that the plaintiff's knowledge of the defective construction of the bridge, and the use of it notwithstanding such knowledge, absolutely barred all right of recovery. Certainly, in view of the limited knowledge which the plaintiff must necessarily have had as to the

character of the bridge and the extent of the danger incident to its use, he can hardly be said to have "consented" to the injury, or even be regarded as having voluntarily braved a known and inevitable danger, trusting to chance or good fortune for coming out uninjured.

We do not mean to say that in every conceivable case the fact that a person injured knew of the danger to which he voluntarily exposed himself would not, of itself, preclude him from a recovery. It is possible that a person's acquaintance with the defective or unsafe condition of a bridge, or other portion of a highway, might be such that it would put him upon notice as a prudent man that an attempt to travel over the same would be inevitably attended with a certain, fixed, appreciable, apparent and forbidding danger; in which case, knowing and appreciating the extent of the hazard and the probability of his being injured, he nevertheless may choose to take the risk, trusting to the extra precautions he mentally resolves to take as a means of defeating the threatened disaster. He does not, however, *consent* to to the injury which may follow; else, why should he take precautions to avoid or defeat the peril? Again, where the danger lurked under cover and was not readily apparent to a casual observer, however prudent he might be, the person injured might have peculiar means of knowing or apprehending the danger, because of familiar acquaintance with the defect in question, or from past experience with defects of a similar character. For example, if a man were seriously injured while passing over a defective portion of the highway to-day, though the danger appeared to him only slight and he used reasonable care to avoid it, he would not be justified in making another attempt to pass, to-morrow, over the same defect; nor, indeed, over a similar place which appeared equally dangerous. Other instances might be cited where the conduct of the party, under the peculiar

circumstances of a particular case, would so plainly appear inconsistent with the claim that he was acting with that degree of diligence to be expected of him, that a court would be justified in holding as matter of law that he could not recover. The case of *Tift* v. *Jones*, 74 *Ga.* 469, seems to afford an illustration of this kind. We do not wish to be understood as laying down a rule applicable alike to all cases in which it may appear that a party injured knew in advance of the danger to which he subjected himself; but the law announced is to be regarded as controlling the present case, and only such others as are akin to it by reason of their own peculiar facts and general complexion.

The view we have taken of the question under consideration is abundantly supported by an overwhelming array of the most respectable and reliable authorities. In many of them we find such apt and pertinent expressions, we shall take the liberty of quoting from them literally and extensively, believing that in so doing the matter will be presented much more clearly and forcibly than we could hope to do in our own language. Before so doing, however, it must not be forgotten that under the rule, of force in this State, allowing partial recovery in cases of contributory negligence on the part of the plaintiff, it is still more proper to enforce the doctrine we are endeavoring to establish.

Mr. Bishop, one of the most distinguished law-writers of this country, after stating the duty of a municipality to keep its highways in repair, and that the traveler is required to use only ordinary care, says: "But if, in a particular instance, he has knowledge that the way is in an ill condition, he must, should he use it, apply a greater or still greater care, according to the demands of the special facts. And the danger may be so imminent, and the necessity for passing over it so slight, that the court can pronounce the going upon it negligence

in law, whereupon any resulting injury will be without recompense. Yet, ordinarily, as the laying out of the way has established its legal necessity, the mere fáct that one, knowing of a defect, passes over it, will not defeat his claim should he suffer harm." Bish. Non-Contr. Law, §1013. The text is sustained by a large number of cases, some of which we shall ourselves refer to more particularly before closing this opinion. In the American and English Encyclopædia of Law (vol. 4, p. 35, under the title "Contributory Negligence") it is stated: "But even though the person injured knew of the danger, or had reason to apprehend it, yet it does not necessarily follow that he has been guilty of contributory negligence. Notwithstanding his knowledge of or reason to apprehend danger, he may have been in the exercise of ordinary care to avoid injury; and in such event, his injury may be solely due to the negligence of another." See, also, the numerous authorities cited in note 2, under the headline, "But Knowledge of Danger not Negligence, *per se."* Again, in Elliott on Roads & Streets, page 470, it is said, the fact that a traveler "voluntarily attempts to pass, with knowledge of the defect or obstruction, is not ordinarily conclusive evidence of a want of due care; but if he has, or ought to have, notice thereof, he must exercise such care as the circumstances demand, and if an ordinarily prudent person would not attempt to pass, under the circumstances, he will be guilty of contributory negligence." Section 221 of Jones on Negl. Mun. Corp. is as follows: "Many cases have arisen where it has been shown by municipal corporations that the persons who have endeavored to hold them responsible for defective ways were themselves aware of the existence of these defects, and effort has been made to establish the rule that knowledge of a defect in and subsequent user of a walk would estop a person injured from claiming damages. But this is not

the law, for 'such knowledge does not always bar a party from a right of recovery.' If a person knows that a walk is defective, he may use it unless his act in so doing is not reasonably prudent. He is not obliged to give up a walk provided by the corporation, or else use it at his peril, but he is obliged to exercise reasonable care. He may continue to go where the corporation sanctions his going, but he can no longer assume that the walk is safe. He knows that it is not so, and his conduct must be regulated by this knowledge. Especial care is due from him, and unless he exercises reasonable care, in view of all the circumstances surrounding his conduct, he will be negligent." In treating of the voluntary exposure of one's self to danger, Beach observes: "Knowledge, however, in this respect, does not necessarily constitute contributory negligence. It is plain that one may exercise due care with full knowledge of the danger to which he is exposed or to which he lawfully exposes himself. This certainly is not contributory negligence. When knowledge is fastened upon the plaintiff, it is presumptive evidence of contributory negligence; but it is a disputable presumption, and may be rebutted by proper evidence of the exercise of ordinary care under the circumstances."

We might content ourselves with resting upon the foregoing extracts, all of which seem to be supported by the authorities they cite. We will, however, notice a few of the very large number of cases which we have examined and which more closely bear upon the question in hand. Thus, in The City of Emporia v. Schmidling, 33 Kan. 485, it was held that: "The fact that a person uses a street or sidewalk after he has notice that it is out of repair, is not necessarily negligence. Persons are not to be entirely debarred from the use of a street because it may be defective or somewhat dangerous; but where danger exists, and it is known, ordinary prudence would

require of those using such street greater vigilance and care and caution, corresponding with the danger, to avoid injury." Again, in Lowell *v.* Township of Watertown, 58 Mich. 568, it was held that knowledge of a defect in a country road along which a man was walking on a dark night did not necessarily establish his negligence, but was only a fact for the jury to consider in determining whether he was negligent or not. The Supreme Court of Indiana, in Henry County Turnpike Company *v.* Jackson, 86 Ind. 111, laid down the doctrine that reasonable care by a traveler did not require that he should forego travel over places known to be dangerous, unless to do so was inconsistent with reasonable prudence; and that previous knowledge of the dangerous condition of a turnpike would not alone prevent a recovery for injuries occasioned because of such dangerous condition.

Contributory negligence cannot be imputed to a pedestrian who was injured because of a washout in a sidewalk, merely because he had knowledge of the defect. City Council of Montgomery *v.* Wright, 72 Ala. 411. "Previous knowledge of the condition of a street or sidewalk is not conclusive evidence of contributory negligence, so as to bar a recovery by a person injured in consequence of its being out of repair, unless its condition is such that, under like circumstances, a person of ordinary prudence would not venture upon or over it." McKenzie *v.* City of Northfield, 30 Minn. 456. And to the same effect, see Owen *v.* City of Chicago, 10 Brad. (Ill.) 465, and City of Aurora *v.* Brown, 12 *Id.* 122. In the latter case, it was held that a party, knowing the defective condition of a sidewalk, was not entitled to recover, because he did not take the necessary precautions to prevent a fall. In Smith & Wife *v.* City of St. Joseph, 45 Mo. 449, the doctrine is stated to be that: "The fact that a person injured by a defect in a

highway or street had previous knowledge of the defect, is not conclusive evidence of negligence on his part. It is a fact to be submitted, with other evidence, to the jury; and in an action to recover damages for an injury caused by such defect, it is only necessary for plaintiff to show that he exercised ordinary care to avoid the accident." The New York Court of Appeals, in Bullock *v.* Mayor &c. of New York, 99 N. Y. 655, the rule is laid down that: "Persons have a right to use the sidewalk of a street, although knowing it is in an unsafe condition; and if injured, it is a question for the jury whether they were guilty of any carelessness which contributed to the injury." In Osborne *v.* London & Northwestern Ry. Co., L. R. 21 Q. B. Div. 220, it appeared that the plaintiff was injured by falling on the steps leading to the defendant's railway station. He knew that the steps were dangerous, but went down carefully holding the hand-rail; and it was held that the defendant did not show that the plaintiff, with a full knowledge of the nature and extent of the danger, had voluntarily agreed to incur it, so as to make the maxim " *Volenti non fit injuria* " applicable, and therefore he was entitled to recover. The case of *Dempsey* v. *City of Rome*, 94 *Ga.* 420, is in line with the array of authorities above cited.

But why multiply further the citation of authorities? The law is plain and clear, and in a nutshell is as follows: If the danger arising from a defect in a bridge, or other portion of the highway within the limits of a city, is obviously of such character that no person, in the exercise of ordinary prudence, would attempt to pass over the same—or, in other words, if such an attempt would, of itself, plainly and unequivocally amount to a want of ordinary care and diligence,—the court may so instruct the jury as matter of law. But in other cases, the mere knowledge of the existing defect

will not prevent a recovery on the part of one who is injured because of the defect, if the use of the bridge or highway in which the defect exists is consistent with ordinary care, and it further appears that the plaintiff did in fact exercise such care. All cases of this kind should be submitted to the jury, who, in determining what would be ordinary care in the particular instance, should take into consideration and carefully weigh all the facts and circumstances; and nothing short of the care which a person of ordinary prudence would exercise with reference to the existing condition should be held sufficient on the part of the plaintiff.

It is not our present purpose to express any opinion or intimation as to the merits of the case now under review. A new trial is ordered, because the plaintiff was deprived by the above quoted charge of the court of the benefit of having the jury pass upon one of the main issues involved, the decision of which may turn the scale either the one way or the other.

*Judgment reversed.*