## ATLANTIC COAST LINE RAILROAD CO. *v.* KNAPP.

1. Where a petition set out the creation of an abatable private nuisance, and its maintenance by the defendant (the owner of the land on which it was erected) after notice to abate, with resulting damages, it was not subject to general demurrer on the ground that it set forth no cause of action.
2. Where a railroad company created and maintained a nuisance by diverting the natural flow of a branch, causing damage, and a suit was brought therefor, which resulted in a nonsuit; and where, while the case was pending, the company was merged with another and ceased to

exist as a separate entity, the other company taking all of its property and· assuming all of its debts and liabilities, a. renewal of the suit against the company resulting from the merger, brought within six months after the grant of the nonsuit, was a renewal against the original company within the meaning of the Civil Code, § 4381.

3. Even if a suit for the original creation of a nuisance be barred by the statute of limitations, still, if it be a continuing nuisance which can and should be abated, a suit for damages resulting from its maintenance will not be dismissed; nor will such a suit for damages accruing within the statute of limitations be dismissed as a whole, although it may seek to recover for some damages as to which suit is barred.

4. If a person is liable both for the creation and maintenance of a nuisance, there is no misjoinder of causes of action in suing for both in the same suit.

(a) It is not held that there can be a recovery on the basis that a nuisance is permanent and not abatable, doing the entire damage at once, and also for the continuance of the same nuisance as abatable.

5. The action was one for a tort, and the allegations of merger of the two companies, and as to the contract of merger by which the debts and liabilities of the company erecting the nuisance were assumed, were made to show the liability of the company formed by the merger, and did not subject the petition to demurrer on the ground that it was a suit both for a tort and on a contract.

6. The other grounds of demurrer were properly overruled, except as to the claim to recover for mental pain and anxiety caused by the sickness of plaintiff's family, for the rent paid for a house in a town four miles· from the plaintiff's farm for four years, and for the purchase-price and cost of maintaining a horse and buggy for seven years. Direction is given that these items be stricken.

FEBRUARY 12, 1913.

Action for damages. Before Judge Thomas. Thomas superior court. October term, 1911.

D. F. Knapp brought suit against the Atlantic Coast Line Railroad Company for damages. The petition, as amended, alleged substantially as follows: In 1895 the plaintiff owned a certain described tract of land through which the line of the defendant company (then known as the Savannah, Florida & Western Railway Company) extended. There flowed through plaintiff's land a natural branch of fresh, pure water. This ran for a short distance along the right of way of the company, and then crossed the right of way and flowed into a pond on the opposite side thereof. This pond had been used by the cattle on the farm for so long a time that it was impossible to get them to go elsewhere for water, and it was the principal supply of water on the place. In the spring of 1895, against his wishes and over his protest, that company closed up, with logs, rubbish, and other things, the natural channel

of the branch where it crossed the right of way of the railroad, and cut and opened a ditch from the point where it filled up the natural channel, and thus diverted the water from flowing into the pond and caused it to flow along one side of the right of way and empty into a different channel from its original one. 'This was not necessary for the complete and full enjoyment and exercise of the franchise of the railroad as a public carrier. It also erected a fence on both sides of its right of way, and the plaintiff's cattle were prevented from using the water of the branch. This branch supplied the pond with sufficient water, and since its diversion the water in the pond gets so low that it becomes stagnant and muddy and unfit for stock to drink, and often there is not enough water for plaintiff's cattle and stock. By reason of this, certain described cattle, of a specified value, died. Prior to the diversion of the water from the pond, plaintiff and his family lived happily and comfortably at their home on the land, and enjoyed good health; but soon after the branch was thus diverted from its natural course, water in the pond became stagnant and dried up to such an extent as to leave large portions of the bottom exposed to the heat of the sun, thus causing to be sent out poisonous, offensive, miasmatic, and malarious gases and odors which filled the atmosphere which the plaintiff and his family were compelled to inhale, their home being in close proximity to the pond. By reason of this the health of plaintiff and his family was greatly impaired, and became so bad that it was impossible for them to continue to occupy their residence, and he was compelled to remove his family to a healthy location at a great expense in moving, and forced to rent a house and pay rent therefor for four years, beginning in the spring of 1896, at $60 per year. The expense of moving amounted to $200, and his furniture was damaged in moving in the amount of $150. By reason of his enforced removal, he was not able to keep his farm in a proper state of cultivation by personal attention and supervision. He gave it the best attention possible, but it was impracticable to run the farm as successfully as before; and by reason of this fact he lost the value of his personal labor on, attention to, and supervision of the farm. The distance which he was compelled to move from his home was four miles, and on account of his physical condition caused by the conduct of the defendant he was unable to attend to business on his farm, and was unable to

walk the distance between it and his rented home, and had to keep a horse and buggy for the purpose of going back and forth. During the years 1896 to 1902 inclusive he was compelled to buy and keep up this extra horse and buggy at a cost of $120 a year; and he lost at least three years of his own labor on the farm during the period named, at a cost to him of at least a hundred dollars a year. The sickness of plaintiff and his family, caused by the unlawful and wilful acts of defendant, caused him great worry and anxiety, he suffering great mental and physical pain both from his own sickness and the strain of watching over and waiting upon his sick wife and children, and also expense for medicine and doctor's bills, not only during the time he lived on the farm, but also during the years 1896 to 1899, inclusive, being the years he was compelled to stay away from his home by reason of the facts alleged, and up to and including the year 1902. (There was a detailed statement of the sickness of himself and family, and the expenses incurred thereby.) On account of the sickness in his family, he lost at least three years labor of himself and his family, in the years 1896 to 1902, besides the loss in labor and time expended in keeping up, feeding, and clothing his family. He and his family, having partly recovered from the sickness caused by defendant's wrongful acts, in the fall of 1899 moved back to his home and farm, and undertook to again live there and cultivate the place; but on account of the sickness of himself and family, resulting from the continued diversion of the branch, he was unable to do so, and was compelled to sell his farm in 1902 at a greatly reduced price. The value of his home and farm was decreased by the wrongful acts stated, in the sum of $1,000. Ever since the diversion of the stream from its natural channel, the pond has been a continuing private nuisance. The defendant, after being notified by plaintiff to abate it, continued to maintain it, and thus caused the damages to the plaintiff. On September 30, 1901, plaintiff filed his action in this superior court against the defendant company, then known as the Savannah, Florida & Western Railway Company, for this cause of action, but a nonsuit was granted by the presiding judge at the October term 1904. Plaintiff, having paid all costs in that case, renews this action within six months after the date of the nonsuit. In April, 1902, the Savannah, Florida & Western Railway Company merged and consolidated

with the Atlantic Coast Line Railroad Company, under the name of the latter, which took charge of and operated all of the property of the former company, and by the agreement of merger assumed all of the debts and liabilities of the former company both in law and as matter of contract. No other provision was made for the payment of the debts and liabilities of the Savannah, Florida & Western Railway Company, and that company went entirely out of existence. Damages were laid at $6,000.

The defendant demurred generally and specially to the petition. Among other grounds of demurrer, it was contended that the petition set out no cause of action; that if any cause of action ever existed, the right to sue was barred by the statute of limitations; that there was a misjoinder of causes of action, in that plaintiff sought to recover for the creation of a nuisance, and also for its maintenance after notice to abate it; that there was a misjoinder of actions, in that the plaintiff sought to recover on an alleged tort, and also on an alleged contract of merger between the Atlantic Coast Line Railroad Company and the Savannah, Florida & Western Railway Company. There were numerous special grounds of demurrer as to particular paragraphs and allegations in the petition. The court struck the allegations by which it was sought to recover for the support of the plaintiff's minor daughters; those in regard to $150 damages arising from the breaking of furniture; those by which it was sought to recover for labor of the members of the plaintiff's family, without naming the members and giving the character and value of the services, and those which sought to recover for feeding and supporting his family; also the allegations in regard to the decrease in market value of the place, because the market value was not stated. The other grounds of the demurrer were overruled; and the defendant excepted.

*Bennet & Branch, Hugh J. MacIntyre,* and *Russell Snow,* for plaintiff in error.

*Charles P. Hansell* and *Fondren Mitchell,* contra.

LUMPKIN, J. (After stating the foregoing facts.)

1. There was no error in overruling the demurrer based on the ground that the petition set out no cause of action. It alleged the creation of an abatable private nuisance, and its maintenance by the defendant after notice to abate it, with resulting damages.

2. One ground of the demurrer was aimed at the allegation that

a suit had been brought in 1901 in the same court against "the defendant company then known as the Savannah, Florida and Western Railway Company," that a nonsuit had been granted, and that costs were paid and the present action was brought in renewal thereof within six months after the nonsuit. The contention is that this was not a renewal within the meaning of section 4381 of the Civil Code, as to the effect on the statute of limitations. We can not assent to this position. It was alleged that pending the first suit there was a merger of the Savannah, Florida and Western Railway Company with the Atlantic Coast Line Railroad Company and under the name of the latter, that the first-mentioned company went out of existence, and its property was taken over by the defendant, which assumed all of its debts and liabilities, and that no other provision for the payment of its debts was made. Assuming this to be correct, the defendant became answerable for the liabilities of that company. *Atlantic & Birmingham Ry. Co.* v. *Johnson,* 127 *Ga.* 392 (56 S. E. 482, 11 L. R. A. (N. S.) 1119). It has been held that the code section above cited is the codification of a remedial act, and should be liberally construed. *Cox* v. *Strickland,* 120 *Ga.* 104, 111-112 (47 S. E. 912, 1 Ann. Cas. 870). To hold that the suit against the Savannah, Florida and Western Railway Company could be renewed, that by the merger the Atlantic Coast Line Railroad became liable for the tort of the former company and could be sued for it, that the constituent company could no longer be sued separately, but that the suit could not be renewed against the company formed by the merger, so as to affect the bar of the statute of limitations, would be a narrow and strict construction.

3. The contention that the action was barred by the statute of limitations is covered by the ruling in *Gabbett* v. *City of Atlanta,* 137 *Ga.* 180 (73 S. E. 372), and the cases there cited. The petition set forth not only the creation of a nuisance, but its continuance by the defendant after notice to abate. It was of a character, under the allegations, which could and should have been abated. Whether an action for the creation of the nuisance was barred or not, the suit should not have been dismissed on general demurrer, if the action for the maintenance was not barred.

4. If the same person creates and maintains a continuing, abatable nuisance, there is no misjoinder in alleging both in the

same action. If there is in law an identity between corporations, or a responsibility on the part of one person for the conduct of another in creating and maintaining a nuisance, so that legally the case stands as if the responsible person had himself committed the tort, there is likewise no misjoinder of causes of action. Civil Code, § 5521. The decision in *Southern Railway Co.* v. *Cook,* 106 *Ga.* 450 (32 S. E. 585), cited by counsel for the demurrant, does not conflict with the ruling now made. There an action was brought alone for the erection of a nuisance on real estate. The evidence showed that it had not been erected by the defendant, but by a predecessor in title. It was held that there was a variance between the allegation and proof. This was in accord with Civil Code, § 4458, which declares that the alienee of property causing a nuisance is responsible for its continuance, but there must be a request to abate before action is brought. No allegation of a request to abate was there made, nor was there any question of merger or consolidation.

We do not mean to hold that a plaintiff could recover for a nuisance both as permanent and non-abatable in character, and causing the entire injury at once, and also for its continuance as abatable; but the allegations here do not make that case.

5. There was no error in overruling the ground of the demurrer which set up the contention that there was a misjoinder of actions, because suit was brought for an alleged tort and also on an alleged contract of merger. The suit was not on a contract, but the merger was alleged to show the legal responsibility of the defendant for the tort of one of its constituent companies.

6. The plaintiff sought to recover for his mental pain and anxiety on account of the sickness of his family. This is not a proper element of damage, and should be eliminated. Loss of services of a child may be an element of recovery, with proper allegations, but not anxiety and worry about him.

One ground on which the plaintiff sought to recover, and which was pleaded as an element of damage, was that, on account of the unhealthy condition of the place where he lived, caused by the pond, he had to move to a town some four miles away, and there rent a house at sixty dollars per year for four years. He also alleged that, on account of the distance and his physical condition, he was unable to walk back and forth between his new residence

and his farm, and that he had to buy and "keep up" a horse and buggy at a cost to him of a hundred and twenty dollars a year, amounting to $840 for seven years. He sought to recover these two items of damage. We think they were too remote to be recoverable. Probably the diminished rental value of the farm before he sold it would be a proper subject of consideration, or, if the residence were rendered uninhabitable, possibly an expenditure equivalent to the rental value thus lost might be considered. But a mere allegation that he moved from a farmhouse to a town residence some miles distant, for which he paid a certain amount during four years, is too speculative to furnish a basis for recovery.

As to the horse and buggy, apparently the plaintiff still owns them, or their proceeds, as there is no allegation to the contrary. So that, if the element of damage pleaded on that account were allowed, he would not only recover the actual expenses incurred by him in going to his farm and returning home, but would have the purchase-price of his horse and buggy paid, and the cost of maintaining them for seven years, while they may have been used for many other purposes besides going to the farm, and finally would own the horse and buggy for future use, though he has sold the farm several years since. Such a claim for damages, is too speculative.

We direct that the judgment overruling the demurrer be so amended as to strike the claim to recover for the plaintiff's mental pain and anxiety on account of the sickness of his family, on account of the amount paid for the rental of a residence in the town of Metcalfe, and on account of the purchase and maintenance of a horse and buggy. The other grounds of the demurrer were properly overruled.

*Judgment affirmed, with direction. Beck, J., absent. The other Justices concur.*