8199, 8200.  MITCHELL COUNTY *v.* DIXON; and *vice versa.*

1. "If a plaintiff shall be nonsuited, or shall discontinue or dismiss his case, and shall recommence within six months, such renewed case shall stand upon the same footing, as to limitation, with the original case; but this privilege of dismissal and renewal shall be exercised only once under this clause."  Civil Code (1910), § 4381.  This section of the code is remedial and is to be given a liberal construction.  The present action is a renewal of a dismissed suit, and was filed within six months after the dismissal.  The cause of action is not barred.

2. Section 411 of the Political Code (1910) provides that "all claims against counties must be presented within twelve months after they accrue or become payable, or the same are barred; unless held by minors or other persons laboring under disabilities, who are allowed twelve months after the removal of such disability."  If under this section it is required that the claim against the county be presented *in writing* within the time prescribed, the bringing and service of a suit against a county within twelve months of the accrual of the right of action are sufficient presentation of a claim against the county within the meaning of the section quoted.

3. A part of a public road which constitutes the abutment to a public bridge, and which is necessary and essential to the existence and use of the bridge, is a portion of the bridge itself; and the obligation of a county to keep the bridge in repair, and the liability resulting from the failure to discharge the duty of repairing, apply to that part to the same extent as it does to the portion of the structure ordinarily called the bridge.

4. A county is not liable for an injury produced by a defect in a private way or road; nor is it liable for a failure to provide a safe approach from a private way to a public highway of the county, or vice versa.  A county is not liable for negligence in maintaining or permitting an unsafe approach from a private way or road to a public bridge, such approach not being essential or necessary to the existence or use of the public bridge.

5. A petition which shows that the plaintiff knew of a defect in the bridge, or in its earthen abutment forming a part thereof, and that there was some danger in driving over it, is not subject to general demurrer, unless it appears that the danger was so obvious that no ordinarily prudent and cautious man would venture on it or over it.  A traveler may know of a defect in a bridge or the abutment forming a part thereof, and that there is some degree of danger in attempting to go on or over it, and still may recover from the county for injuries sustained in so doing, if it clearly appears that the danger was not obviously of such a character that driving over the bridge would necessarily amount to a want of ordinary and reasonable care and diligence, and if it also appears that in driving over the bridge the plaintiff in fact observed such care and diligence.

6. The first count of the petition set forth a cause of action, and was not subject to the demurrers, general or special; the second count did not

set forth a cause of action, and the court properly sustained the general demurrer to that count.

DECIDED MAY 3, 1917.

Action for damages; from Mitchell superior court—I. J. Hofmayer, judge pro hac vice. April 19, 1916.

*Peacock & Gardner, E. M. Davis,* for Mitchell County.

*Pope & Bennet,* contra.

GEORGE, J. W. C. Dixon filed a suit against Mitchell County, in two counts. The first count, which the court below held good as against the county's demurrer, alleged, in substance, that the plaintiff, on September 9, 1912, in the daytime, was driving in his buggy southward along a public road of Mitchell County, at a place where the public road crossed a stream, and where the county maintained a bridge over the stream; that the bridge was built since the year 1888, and that it consisted of a wooden structure about twenty feet long, measured along the said road, and earthen abutments for the same, extending from said wooden part northward and southward along said road; that while plaintiff was thus driving along on said abutment, the same being a part of the bridge, his buggy fell suddenly into a large hole about four feet wide, about four feet long, and three feet deep, which was about fifteen or twenty feet south of the wooden part of the bridge, and about twenty feet west of the central and most elevated part of said abutment; that by reason thereof plaintiff was thrown from his buggy and his buggy was overturned, and plaintiff was severely injured; that said defect in said abutment was known to the county commissioners and was not known to plaintiff, and that plaintiff, in February after said injury, orally presented his claim for his said injuries to said county commissioners in lawful meeting assembled, and said county commissioners then and there accepted such presentation of said claim and acted upon it, and promised plaintiff that they would investigate said claim and advise him whether it would be paid, and that they did investigate and refused to pay it, and that, by reason of the foregoing facts, said county commissioners waived presentation of said claim in writing and estopped the county from setting up the defense that said claim had not been presented in writing. Plaintiff in said first count alleged also that he had brought suit against the county within twelve months, and that service had been duly acknowledged by

the county on said suit within twelve months after the injury complained of, and that said suit was pending until July 5, 1915, when the same was withdrawn by plaintiff, and that the present suit was brought in renewal thereof, and within six months after the withdrawal and after the payment of all costs. A copy of the original suit was attached to the present suit and made a part of both counts of the petition. In an amendment to the first count of the petition the plaintiff alleged, that at the time of his injury his eyesight was somewhat defective; that·it was sufficiently good to enable him to travel by buggy in perfect safety on roads and bridges which were maintained with reasonable care and diligence, and that at the time of his injury the road overseer and other agents of said county were operating a large force of convicts and mules and scrapes on said bridge and abutment, and said convicts and mules and vehicles were being driven at hard labor and in rapid motion around and about the defect in said bridge and its abutment, largely concealing said defect from plaintiff, and that the newly piled up earth and newly made holes and the colors of the same were such as to make it impossible for plaintiff, as affairs there existed, to discover said defect, and for these reasons the plaintiff did not know of said defect, and could not, by the exercise of ordinary diligence, have discovered the same in time to avoid the injury.

The second count of the petition, which was stricken by the court upon demurrer, contained substantially the same allegations of fact set out in the first count, except that the hole. into which plaintiff's buggy suddenly fell was alleged to be outside of the abutment and in the ground a few feet west of the west side of the said abutment, but it was averred that even though said hole were outside of the abutment, the county would be liable to him for his injury, by reason of certain facts set out in that count, in substance as follows: That said bridge over which plaintiff was passing at the time he was injured consisted of a wooden structure about twenty feet long, measured along said road, and about twelve feet wide, measured across said road, and about five feet above the general level of the ground on each side of said bridge. (The stream over which said bridge extended was what is known as a South Georgia "slough," that is, a stream carrying a large body of water at certain seasons of the year, but having for the most of its length

practically no banks, but extending, on the contrary, in a broad, shallow, slowly moving sheet of water, and flowing through the low places of the very flat level country found often in the "wiregrass section" of Georgia.)  There was an earthen abutment about fifteen feet wide across said road, extending from said wooden part of said bridge northward and southward along said road for a distance of seventy-five or one hundred feet from said wooden part of the bridge, said abutment being of the same height as said bridge, where the same joins said bridge, to wit, about five feet above the general level of the ground on each side of said road, and the height of said abutment became gradually less as the distance from said wooden part of said bridge increased, until said abutment came to the level of the surrounding country and merged into the road; that for more than three years prior to plaintiff's injury said county had maintained said bridge and abutment as above described, and had also maintained, at a point about ten feet south of the wooden structure of said bridge, a wood apron, or short bridge, consisting of planks laid side by side upon sills, said apron extending laterally from the top of said abutment downward and westward across a drain ditch, which ran along the western side of said abutment at that point to the beginning of a settlement road or private way, which private road branched off from said public road and its bridge at that point, which settlement road extended westward to plaintiff's farm; that plaintiff had been using said bridge and abutment and said apron and said settlement road as a means of approaching his farm during the said three years; that on the day when he was injured the county authorities were working the county convicts and road hands at that point, and had, unknown to plaintiff, piled up a lot of fresh earth on said abutment, so that the level thereof at the point where said "apron" extended from it into said "settlement" road was about one foot higher than it had been previously, so that there was a sharp drop-down, or decline, from the top of said abutment to said "apron," so that a buggy turning off from said abutment at its new level, and going on to said apron, would acquire a dangerous speed, by reason of said drop-down; that at the same time said county authorities had also dug a large hole, about four feet wide and four feet long and three feet deep, in the ground to the westward of said "apron," said hole extending about eighteen inches into the beaten track of said "settlement" road, so that a buggy which turned off from said

public road and bridge and ran down said "apron" would run into said hole; that plaintiff, driving as he had been accustomed to do, did turn his buggy from the top of said abutment, at its said new level, on to said "apron," and, in trying to drive along said "apron" and said settlement road extending to the westward, plaintiff's buggy, by reason of the sharp decline from the new level of said abutment down to said "apron," ran rapidly down said "apron" and into said hole, whereby plaintiff was thrown out of said buggy and injured as set forth in the petition. The specific defects in said abutment, which plaintiff claims in said second count to be the cause of his injuries, were alleged to be as follows: (1) The existence of said "apron" leading from the top of said abutment down towards said settlement road (said "apron" constituting an implied invitation to travelers to descend from the top of said abutment by means of said "apron") at a time when there was immediately to the west of said "apron," and at its lower end, said open hole, the danger of which was partially concealed; (2) the existence of said wooden structure and abutment at so great a height, to wit, a foot or more, above the highest part of said "apron," so that the drop-down of any team, leaving the top of said abutment and going down onto said "apron," was such as to cause great and dangerous speed to such team in going down said apron and into said hole; (3) the existence of said wooden structure and its abutment in said condition, without any guard-rails or other means to prevent travelers from going off from said wooden structure and the top of said abutment, down upon said "apron" and into said hole; (4) the existence of said wooden structure and abutment in said condition, without any warning signs, or other warning, placed there to warn travelers against using the same in said dangerous condition. The second count likewise contained an allegation to the effect that plaintiff's eyesight was somewhat defective, that it was sufficient for him to travel in safety on roads and bridges maintained with reasonable care, and also that at the time of the injury agents of the county were operating a large force of convicts and mules and scrapes on said bridge, and abutment, around and about said defect, so that the same was largely concealed, and that it was impossible for plaintiff to discover the defect in time to avoid injury.

To this petition the county demurred, (1) because the petition

set forth no cause of action; (2) because the cause of action, if any existed, is barred by the statute of limitations, the suit not being filed within two years from the date of the alleged injury to the plaintiff; (3) because there is no allegation in the petition, or in either count thereof, that the plaintiff submitted in writing to the defendant, through its proper officers, his claim or demand within twelve months of the date of the infliction of the injury to the plaintiff. There were other grounds of special demurrer, but these grounds simply enlarge in one way or another the general demurrers filed in behalf of the county.

In the main bill of exceptions Mitchell County excepts to the refusal to sustain the county's demurrer to the first count of the plaintiff's petition; and the cross-bill of exceptions, filed by the plaintiff, excepts to the judgment sustaining the county's demurrer to the second count of his petition.

1. Mitchell County, as plaintiff in error in the main bill of exceptions, contends that the plaintiff's cause of action was barred by the statute of limitations. From the allegations of the petition it appears that the plaintiff's injury occurred on September 9, 1912. It further appears that a suit of this plaintiff was filed and served upon the county within one year of the date of the alleged injury, and that this suit was dismissed and withdrawn by the plaintiff on July 5, 1915. The present suit was filed within less than six months of the dismissal of the former suit. By § 4381 of the Civil Code (1910) a suit renewed stands on the same footing, as to limitation, with the original case. It is earnestly insisted by the county that the present suit is not a renewal of the original suit. The original suit, dismissed on July 5, 1915, is a part of the present petition. Substantially the same cause of action alleged in the original suit is set out in the present suit. This is all that is required. The code section allowing the renewal of a suit within six months after dismissal, and providing that the renewed suit shall stand on the same footing, as to limitation, with the original suit, has received a liberal construction. Indeed, the section is remedial, and is intended to preserve the right of a party to renew his cause of action wherever it has been disposed of on any ground other than one affecting its merits. *Atlanta, Knoxville & Northern Ry. Co.* v. *Wilson,* 119 *Ga.* 781 (47 S. E. 366) ; *Cox* v. *Strickland,* 120 *Ga.* 104 (5), 109 (47 S. E. 912, 1 Ann. Cas. 870). Compare

*Holmes* v. *Huguley,* 136 *Ga.* 758 (72 S. E. 38); *Atlantic Coast Line R. Co.* v. *Knapp,* 139 *Ga.* 427 (77 S. E. 568). The right of renewal is somewhat broader than the right of amendment. Every allegation made in the petition in the present action might have been added by amendment in the original case.

2. The plaintiff in error in the main bill of exceptions contends that the petition set forth no cause of action, for the reason that it failed to allege a presentation of the plaintiff's claim to the county commissioners, in writing, within twelve months of the accrual of the claim. Since we have already held that the present suit is a renewal of a suit previously brought, and since it is distinctly averred in the petition that the original suit was both filed and served upon the county within twelve months of the accrual of the plaintiff's claim, this contention is answered. It was contended that there was an express waiver of the presentation in writing of plaintiff's claim on the part of the county, and that the county was therefore estopped to insist that the claim in writing was not duly presented to it. We do not determine this question. The Supreme Court of this State has ruled that the bringing and service of a suit against a county within twelve months of the accrual of the right of action are sufficient presentation of a claim against the county, within the meaning of § 411 of the Political Code. See *Dement* v. *DeKalb County,* 97 *Ga.* 733 (25 S. E. 382); *Pearson* v. *Newton County,* 119 *Ga.* 863 (47 S. E. 180); *Elbert County* v. *Brown,* 16 *Ga. App.* 834 (3), 839 (86 S. E. 651). The petition shows a compliance with this code-section, and neither count of the petition is subject to demurrer upon the ground that the alleged cause of action is barred by the statute of limitations. We therefore come to the main question in the case.

3. Is the county liable under the facts alleged in the first and second counts of the petition? Section 384 of the Political Code declares that a county is not liable to suit for any cause of action unless made so by statute. In the case of *Hammond* v. *County of Richmond,* 72 *Ga.* 188, it was ruled that "in cases where the statute provides for liability of counties, a recovery may be had against them; as when no sufficient bond is taken to keep bridges in repair." In the case of *Smith* v. *Wilkes and McDuffie Counties,* 79 *Ga.* 125 (4 S. E. 20), Chief Justice Bleckley, speaking for the court, said: "The counties, to be liable in an action at law for

damage done by those who construct or repair the public roads and bridges, would have to be subjected to such action by statute." The code-section to which we have referred, which appeared first in the Code of 1895, is based upon these two decisions of our Supreme Court. It is the settled law of this State that a county is not liable to suit unless there is a law which in express terms or by necessary implication gives the right to sue. Neither the negligent performance of duties which the county authorities are compelled to perform, or the negligent discharge of duties voluntarily assumed in the exercise of the discretion vested in the county authorities, except in cases provided by statute, gives a cause of action against the county. It is equally well settled in the law of this State that the county is not liable for a defect in a public road, but it has been held that the part of a public road which constitutes the abutment to a bridge, and which is essential to the existence and use of the bridge, is a portion of the bridge itself, and the obligation to keep the same in repair, and the liability resulting from the failure to discharge the duty of repairing, applies to it to the same extent as it does to that portion of the structure ordinarily called the bridge. The term "bridge" includes all the appurtenances necessary to its proper use, and embraces its abutments and approaches. The approach to a bridge constitutes a part of it. Compare *Howington* v. *Madison County,* 126 *Ga.* 699 (55 S. E. 941); *Morgan County* v. *Glass,* 139 *Ga.* 415 (4) (77 S. E. 583), and cases there cited. These decisions of the Supreme Court foreclose the question against the county.

Considering the second count in the petition, we are very clear that it did not set forth a cause of action, and that the trial judge properly dismissed this count upon demurrer. The petition in *Millwood* v. *DeKalb County,* 106 *Ga.* 743 (32 S. E. 577), alleged that the county authorities had exercised the right, under the law, to work the convicts in a county chain-gang upon the public roads of the county; that a named road which crossed a private way had been worked by the chain-gang in such a manner as that persons traveling the private way were liable to be injured, and that the plaintiff, in coming along the private way at night, having no knowledge of the condition in which the public road had been left at the point where the private way intersected it, fell and was injured. There were allegations that the county authorities had failed to pro-

vide railings or other safeguards to protect persons who were traveling along the private way. The petition was dismissed on demurrer, and the Supreme Court affirmed the judgment. Compare *Brunson* v. *Caskie,* 127 *Ga.* 501 (56 S. E. 621, 9 L. R. A. (N. S.) 1002). In *Howington* v. *Madison County,* supra, it is recognized that a county is not liable in damages for injuries caused by a defect even in a public road. Although the second count in the petition charges negligence in several particulars, it is distinctly alleged that Dixon intentionally attempted to leave the public road and to pass into the private road by means of a side bridge designated in the petition as an "apron" bridge. It is therefore manifest that no defect in the bridge or its abutment forced or caused plaintiff to unintentionally drive his horse and buggy onto the apron bridge. The absence of guard-rails would have effectively kept him from entering the private road, but the legislature of this State has certainly imposed no liability upon a county for failure to prevent a traveler from leaving its public highways at any point and regardless of the degree of danger incident to such an act. The plaintiff intentionally turned his horse away from the public road. The side bridge by means of which he attempted to leave the public highway did not in any sense constitute a portion of the public highway or bridge. It was not essential or necessary to the support of the public bridge, including even its earthen abutments. It was there for the convenience of persons using the private way. So long as the traveler used the public bridge, including its abutments, or even the public road, he was in no danger whatever on account of the conditions existing in the private way.

It is unnecessary to decide whether the plaintiff himself was the author of his own injury, in so far as the second count of the petition is concerned. Admitting that he was in no degree negligent (which we do not think is true, under the facts alleged in this count of the petition), there is nevertheless no cause of action set out against the county, for the very simple reason that in the laws of this State there is no provision requiring or authorizing the county to maintain a private road or to provide a safe approach from its public highway to such private way. Certainly no statute, by express provision or necessary implication, gives to any person a right of action against the county for injury sustained in traveling along a private way or in attempting to reach a private way from any public highway or bridge of the county.

Is the county liable under the allegations of the first count of the petition? According to the allegations of fact in this count, the buggy in which plaintiff was riding fell suddenly into a large hole, about four feet wide, about four feet long, and three feet deep, which was about fifteen or twenty feet south of the wooden part of the bridge, and about twenty feet west of the central and most elevated part of said abutment. It is distinctly alleged that this hole was in the bridge. It is insisted by the county that the allegation that this hole was about "fifteen or twenty feet south of the wooden part of said bridge, and about twenty feet west of the central and most elevated part of said abutment," contradicts this allegation and shows that the hole was not in any portion of the bridge or in any part of the abutment necessary and essential to the support and use of the bridge, and which is considered to be a part of the bridge, and which the law required the county to keep in reasonable repair. It is true that a public road of the first class, under the law of this State, is required to be at least thirty feet wide, and a public road of the second class twenty feet wide, etc. From the allegation it is apparent that the earthen abutment to the bridge was about forty feet wide, since it is alleged that the hole was about twenty feet west of the central and most elevated part of said abutment. If, however, the county maintain an abutment to its bridge more than thirty feet in width, a traveler should not be required to know at his peril the portion of the abutment and bridge which, under the law of the State, the county is required to keep in reasonable repair. If the county construct and maintain a bridge more than thirty feet wide, the county thereby impliedly invites the public to use the whole of the bridge, and is liable in an action for damage to one injured thereon by its failure to exercise ordinary care and diligence in keeping the bridge in repair. If a traveler be injured on the south side of a bridge forty feet wide, the county can not shift its responsibility by claiming that its act in maintaining the strip ten feet wide on the south side of the bridge is ultra vires. The traveler is not required to know where, in one bridge, however wide it may be, the county's liability begins or ends. This count clearly charges that the county maintained in a negligent and careless manner the abutment to the bridge described in the petition, and the acts of negligence are distinctly set forth in the petition. It appears that the county was,

ar the time of the injury to plaintiff, engaged in the work of repairing the abutment to the bridge. It affirmatively appears, however, that the county was then permitting the bridge to remain open for general travel, and it must be treated as inviting the public to use this bridge at the time of the injury to the plaintiff. The county is liable for its negligent failure to keep a public bridge in reasonable repair.

. This court can not say that the abutment on which the plaintiff sustained his injury was not a part of the public bridge. This is an issue for the jury. If plaintiff's injury was not the result of the negligence of the county in failure to keep the bridge in proper repair, then the plaintiff can not recover. If he was not in fact using that portion of the abutment which was both essential and necessary to the support and use of the bridge proper, at the time of his injury, he can not recover. This necessarily follows, since the county is liable only for its negligent failure to keep its bridge in repair. This liability does not attach to the county on account of its failure to keep its public road in repair. Nor can this court say, as a matter of law, that plaintiff's injury was the result of his failure to exercise ordinary care. The fact that plaintiff had knowledge that the abutment to the bridge was in ill condition, that the county was then repairing it, and that his eyesight was somewhat defective, are all matters which should go to the jury and should be weighed by the jury in determining whether or not the plaintiff was in the exercise of ordinary care and diligence for his own safety and protection at the time of his alleged injury. The mere fact that he had knowledge of the ill condition of the abutment to the bridge, and undertook to pass over it, will not, as a matter of law, bar his right to recover. The danger in attempting to pass over a public bridge may be so imminent, and the necessity for passing over it so slight, in a given case, that the court can pronounce the going over it negligence in law, barring the right of recovery for an injury sustained in attempting to pass over the bridge. Ordinarily, and as a general rule, the mere fact that one knows of a defect in a public bridge and undertakes to pass over it will not defeat his claim should he suffer injury thereby. If his act in so doing is not reasonably prudent, he can not, of course, recover. With knowledge of a defect in a public road one may continue to use it, but he is obliged to exercise reasonable

care for his own safety in so doing; and what is reasonable care must depend upon all the facts and circumstances in the case. Especially is this court unable to say, as a matter of law, that the plaintiff, under the facts alleged, failed to exercise ordinary care and diligence for his safety in attempting to pass over the public bridge and its abutment, since, under the rule of force in this State, the plaintiff may have a partial recovery in a case where his own negligence, not amounting to want of ordinary care, may have contributed to his injury. Actual knowledge of the condition of a public bridge is not conclusive evidence of contributory negligence, so as to bar a recovery by the person injured in consequence of its being out of repair; unless its condition is such that, under like circumstances, a person of ordinary prudence would not go upon it. If the danger arising from the defect in the bridge is obviously of such character that no person, in the exercise of ordinary prudence, would attempt to pass over it, the court may, as a matter of law, take the issue from the jury. If the use of the bridge in which the defect exists is consistent with ordinary care, the issue is for the jury; and if it should further appear that the plaintiff did in fact exercise such care, he may recover. While the defect in the abutment to the bridge alleged in the first count of this petition is one of such nature and character as to make it perceptible to any ordinarily prudent person, possessed of normal faculties, yet, under all the facts alleged, it can not be said, as a matter of law, that the plaintiff was wanting in ordinary care in venturing upon or over the abutment in which the defect existed. So long as the prudence of the plaintiff in attempting to pass over the bridge and its abutment, under all the facts and circumstances then existing, is a question about which reasonable minds might differ, then the question is one for the jury. Compare *Samples* v. *Atlanta,* 95 *Ga.* 110 (22 S. E. 135), and cases there cited; *Harrell* v. *Macon,* 1 *Ga. App.* 413 (58 S. E. 124), and cases there cited.

We therefore conclude that the general and special demurrers to the first count of the petition were properly overruled, and that the general demurrer to the second count was properly sustained.

*Judgment affirmed on both bills of exceptions. Wade, C. J., and Luke, J., concur.*