## COX *v.* STRICKLAND *et al.*

1. While the word "trespass" generally involves the idea of force, yet in its broadest sense it comprehends any misfeasance, transgression, or offense which damages another's person, health, reputation, or property.

2. At common law trespass on the case was the form of action to recover damages for a libel; and persons charged with a joint libel are "joint trespassers" within the meaning of the constitution, and suable within the county of the residence of any one of such joint "trespassers."

3. The constitution in fixing the venue of suits against joint defendants was intended to be exhaustive, and not to leave a hiatus in which the right to bring a single suit against joint defendants might be lost because of the want of jurisdiction to apply the remedy.

4. Civil Code, § 3786, in granting the right to renew within six months, forms an exception to the statute of limitations, and has no reference to the subject of venue. The new action may be brought "in any court having jurisdiction thereof in this State." Act 1847, Cobb's Dig. 569.

5. While the second suit must be for substantially the same cause of action, it does not have to be a literal copy of that dismissed. It must be by the same plaintiff, or his legal representative, and against all the defendants who were necessary parties to the first suit, or their legal representatives.

6. Where the liability of the defendants is joint and several, with no right of contribution, as in libel, a second action against all of the defendants to the first suit, served upon some of these jointly suable but severally liable, is within the saving provision of the Civil Code, § 3786.

7. The filing of the petition is treated as the commencement of the suit only when followed by due and legal service. If there is no process and no service, and the plaintiff is guilty of laches, the writ becomes abortive, and the court loses jurisdiction to issue process or to have service perfected.

8. But if the plaintiff is active in his efforts to remedy the nonfeasance of officers, and endeavors to have process issue and service made, the jurisdiction of the court continues, to cure the defective process, and to have service perfected, even after the first term.

9. A second original and process to perfect service on joint defendants residing in another county may issue by way of amendment after the appearance term.

10. Where service is duly made under such order, the same relates to the date of the filing of the petition, which will be treated as the commencement of the suit, even though such service be not perfected until after the expiration of six months from the dismissal of the first suit.

Submitted January 25, — Decided May 14, 1904.

Action of libel. Before Judge Mitchell. Brooks superior court. May 4, 1903.

An action for libel was brought in 1894, in Clinch county, against 110 defendants, some of whom lived in adjoining counties. This suit was dismissed in February, 1898, and renewed

in March, 1898, in Brooks county, against all of the defendants, only five of whom were served. The process was directed to the sheriff of Brooks county; the processes attached to the second originals for the defendants residing in Clinch and Lowndes counties were by the clerk also directed to the sheriff of Brooks county. At the May term, 1898, the four non-resident defendants served therewith moved to dismiss for want of legal service. Without any ruling on such motion, the judge at chambers ordered the clerk to amend the process attached to the second originals " by proper direction, and that the same be served in time for the next superior court of Brooks county." The amendment was made, but the second originals were lost. In January, 1899, during the November adjourned term, copies were established, but so changed as to require the defendants in Lowndes and Clinch to appear at the May term, 1899. Four of the non-residents, defendants in error, were properly served April 2, 1899. 105 of the non-resident defendants were not served. The defendants in error residing in Lowndes and Clinch counties demurred on the grounds, that they were not joint trespassers, and therefore not subject to the jurisdiction of Brooks superior court; that the second original having been improperly directed to the sheriff of Brooks, the court could not cause the same to be amended; that service thereunder was void; that the service actually made not being within six months from the dismissal of the first suit, the case was barred, although service was made in April, 1899, on a petition brought in March, 1898, in renewal of a suit dismissed in February, 1898; and that as 110 defendants were sued and served in the first suit and only 5 were served in the renewal, the case was not against the same defendants. The judge dismissed the case, and Cox excepted.

*E. H. Myers* and *S. W. & J. W. Hitch,* for plaintiff, cited Civil Code, §§ 4949, 5872, 5874, 5043, 4973; 47 *Ga.* 312; 110 *Ga.* 223; 111 *Ga.* 874; 113 *Ga.* 415; 114 *Ga.* 731; 92 *Ga.* 669; 93 *Ga.* 742; 86 *Ga.* 634; 83 *Ga.* 281; 51 *Ga.* 203 · 71 *Ga.* 85; 25 *Ga.* 714; 94 *Ga.* 264.

*W. G. Brantley, W. S. Humphreys,* and *Denmark & Ashley,* for defendants, cited 100 *Ga.* 219; 109 *Ga.* 621; 110 *Ga.* 527; 50 *Ga.* 413; 61 *Ga.* 113; Civil Code, § 4939; 97 *Ga.* 543; 113 *Ga.* 414; 9 *Ga.* 297; 47 *Ga.* 312; 12 *Ga.* 613; 68 *Ga.* 446;

95 *Ga.* 17; 104 *Ga.* 831; 68 *Ga.* 448; 32 *Ga.* 272; 75 *Ga.* 612; 93 *Ga.* 579; Bouvier's L. D. 1138; Walker's American Law, 580; 26 Am. & Eng. Enc. L. 570.

LAMAR, J.   An action for libel was brought in Brooks county against King, a citizen thereof, and other joint defendants who resided in Clinch and Lowndes counties.   These latter insist that the superior court of Brooks county had no jurisdiction under that provision of the constitution allowing suits to be brought in the county of the residence of either "joint trespasser" (Civil Code, § 5872); they claim that force is the gist of the action in trespass; and that as there is no force in libel, they are not joint trespassers. In its last analysis their contention amounts to the proposition that the constitution refers only to those actions which at common law were known as trespass vi et armis, trespass quare clausum fregit, and trespass de bonis asportatis, and not to any other action for which trespass on the case might have been brought under the ancient forms of pleading.

Undoubtedly the word "trespass" frequently, even generally, conveys the idea of force.   But it also includes in its largest sense any transgression or offense against the law of nature, of society, or of the country in which we live, whether it relates to a man's person or his property.   Anderson's Law Dic. s. v. "trespass." And this definition was involved in the carefully considered opinion by Justice Lumpkin in *Johnson* v. *Bradstreet Co.*, 87 *Ga.* 79, where it was held that libel was "an injury to the person."   In discussing the well-known origin of the "action on the case" Townshend in his work on Libel and Slander (4th ed.), 36, says, "Under this class was action for *trespass* on the case for words— the ancient form of the action."   Among remedies at common law, Gould's Pleading, 22, includes "*trespass* and *trespass* on the case as actions to recover damages for the wrongful injury of one's person, health, reputation or property."   So that, for some purposes at least, a libel is a trespass.   In *Lee* v. *West*, 47 *Ga.* 312; where two were charged with having enticed the plaintiff's servant, they were treated as joint trespassers within the meaning of the section of the constitution fixing jurisdiction.   Under the Texas statute the defendant was entitled to be sued in the county of his residence, except "where the foundation of the suit was some crime, or offense, or trespass for which a civil action in dam-

ages may lie, in which case the suit may be brought in the county where the crime or offense or trespass was committed." An indirect injury was caused by the boisterous language and conduct of a defendant in the presence of a female. The court held that he might be sued out of the county of his residence, the section relating "not only to actions of trespass proper, as known to the common law, but also to actions of trespass on the case." Hill v. Kimball, 76 Tex. 210. In San Antonio v. Graves (Tex.), 49 S. W. 1103, in a suit against two defendants, the court held that an action may be brought against several joint tort-feasors in the county of the residence of either, treating the word "trespass" as equivalent to "tort," and "joint trespassers" as equivalent to "joint tort-feasors." Under the New Jersey statute it is provided that "where any [person] . . shall in his . . lifetime have committed any *trespass*," the injured party shall have an action therefor against the representative of such deceased. Under this statute an action was brought for backing water on the plaintiff's land; and in answer to the defendant's contention that this was not a "trespass," the court held that, regardless of the technical distinction as to the form of action, the word "trespass," as used in the statute, "must be received as equivalent in meaning to the word 'tort' — so that the effect of the provision is to give a right of suit against the personal representatives of a deceased wrongdoer for any injurious act of a suable nature, without reference to the form in which the remedy must be sought." In the opinion the court said that the synonym of trespass "in law Latin was transgressio, a term which, in its comprehensive signification, embraced every infraction of a legal right. In this sense it comprehended not only forcible wrongs, where the damages were direct and immediate, but also acts the consequence of which made them tortious; . . 'and in general any misfeasance or act of one man whereby another is injuriously treated or damnified is a transgression or tort in its largest sense.'" Ten Eyck v. Runk, 31 N. J. L. 430.

Reputation is as much a part of the real man as an arm or limb is of his body. Injury to the reputation is in many respects the legal equivalent of a battery upon a physical member. The fact that it can only be effected by the spoken word or written sign in no way destroys the legal complexion of the act. A man's body

may be assailed with the fist, and it is a trespass; his character may be assailed by the tongue, and that too is a form of trespass, involving the use of that constructive violence which alone can reach so intangible an attribute of his personality.    There are cases in which it has been held that words may inflict such pain as to amount to cruelty justifying a divorce.    And that a libel is a trespass within the language of the constitution is evident when it is considered that the organic law is to be construed liberally, and so as to accomplish the purpose of the people in convention assembled.    There is a strong presumption that the words were not intended to be given any narrow or purely technical meaning in a chapter which was dealing with the general subject of venue and defining where all suits against joint defendants could be instituted.    The constitution provided where all such suits should be brought in equity cases; where in common-law cases if there was a joint liability under a contract; and evidently intended to declare what might be the venue in suits where persons were jointly liable for a tort.    Otherwise there would be a hiatus.    If defendants' contention be correct, there would be a right to bring a joint action against those who are alleged to have been guilty of a joint libel, and yet there would be no way of enforcing this right if they resided in different counties.    The scope and spirit of the constitutional provision demonstrates that this class of wrongs, this class of trespasses, was not intended to form an exception and stand as a case in which the right was nullified because the remedy failed.    Right and remedy should harmonize, unless the law forbids.    Civil Code, §§ 3076, 4929.

4. The defendants contend, that, the original suit having been brought in Clinch county, and the renewal suit in Brooks county, the case is not saved from the bar of the statute.    But the Civil Code, § 3786, does not require that the suit shall be renewed in the same court or in the same county.    This section is but a codification of the act of 1847 (Cobb's Dig. 569), which allowed the plaintiff to renew " in any court having jurisdiction thereof in this State. "    *Constitution Co.* v. *DeLaughter*, 95 *Ga.* 18.    Whether the section be treated as a permit or as a requirement, it could not modify the constitutional provision as to where suits could be brought.    The law relating to renewals of dismissed cases forms an exception to the statute of limitations, and has no reference to the law of venue.

5, 6. At common law suits frequently abated for matters of form. In such cases the plaintiff was allowed a reasonable time within which to sue out a new writ. This time was theoretically computed with reference to the number of days which the parties must spend in journeying to the court. Hence the name "journeys account." Such renewed suit was but a continuance of that which had abated, and of necessity was in the same court, against the same parties, and for the same cause of action. This ancient remedy was probably never recognized in this State. *Mahon* v. *Justices, Ga. Dec.* Pt. II, 101. In lieu thereof the colonial act of 1767 (Cobb's Dig. 552) provided that in case of reversal or arrest of judgment the plaintiff, his heirs or representatives, might commence a new action within one year. See *Harrison* v. *Walker*, 1 *Ga.* 32. Later the act of 1847 (Cobb's Dig. 569) provided that whenever any case commenced within the time limited by law shall be discontinued, dismissed, or nonsuited, the plaintiff, notwithstanding the intervening bar of the statute, might at any time within six months of such termination of the case renew or recommence the same in any court having jurisdiction thereof in this State. The act of 1856 (Acts 1856, p. 237) was substantially the same as the act of 1847, except that it added the privilege to renew in case judgment for the plaintiff was arrested. These last two acts are held, in *Constitution Pub. Co.* v. *DeLaughter*, 95 *Ga.* 18, to be codified in Civil Code, § 3786. This section does not contemplate a revival or continuance of the original suit as at common law under "journeys account," but that, the first having been discontinued, dismissed, or nonsuited, a new and distinct suit may be brought. Every citizen is interested in the policy of repose which prevents the enforcement of stale demands. Statutes of limitation are based partly on the theory that non-action by a plaintiff tends to throw his adversary off guard, making him careless in the preservation of receipts, vouchers, documents, and other evidence needful for his defense. But when a suit is pending, whether it be brought with technical correctness or not, the defendant is warned to preserve his evidence. The attempted assertion by judicial proceedings of a cause of action in which A gives B notice of his claim is sufficient to stop the running of the statute during the pendency of that suit, and for six months thereafter. In like manner, if B in the same suit, by a set-off or cross-

bill (Civil Code, § 3787, *Crane* v. *Berry*, 60 *Ga.* 362 ; Hunt *v.* Spaulding, 18 Pick. 521) or other appropriate proceeding, should attempt to enforce his cause of action against the plaintiff or other party to the proceedings, the statute would likewise be tolled as to this claim.    Notice had been given.    The opposite party was warned.    If the suit was disposed of on any matter not concluding the merits of the cause of action, or any of the causes of action, asserted in the proceeding by one party against another, it might be thereafter seasonably renewed in the proper forum, in proper form, against any of the proper and all of the necessary parties therein.

Some of the statutes on this subject are much more narrow than that contained in the Civil Code, § 3786.    Some limit it to cases in which there has been an involuntary nonsuit ; others, to dismissal by the court for some matter of form not involving the merits ; others, to dismissals as the result of a reversal; others, to cases where the judgment in favor of the plaintiff has been arrested or set aside.    But our statute, construed in the light of the acts from which it was codified, is very broad.    It can not mean that the form and parties to the new cause shall in all respects be identical with the former.    The first case may have been dismissed because at law instead of at equity, and vice versa (Spear *v.* Newell, 13 Vt. 288, 295; East Tenn. Co. *v.* Fergerson, 35 S. W. 900; Crow *v.* State, 23 Ark. 685 ; Lamson *v.* Hutchins, 118 Fed. 321), or because it was defective in making or omitting an averment, or for a misjoinder of parties.    Woodcock *v.* Boston 38 S. E. 881 (6).    Certainly it could not be expected that the second suit would repeat the error of the first, either in parties or pleadings, forum, venue, form of action, or prayer for relief.    If the cause of action is the same in both cases; if by the same party or his legal representative, and against a person from whom relief was prayed in the first suit, the second action may be renewed.    Of course, the substantial rights of the plaintiff, or liability of the defendant to him or to one another, can not be enlarged beyond that indicated by the pleadings in the first case.    But to the second only those parties are needed who are necessary to enforce and preserve the rights of the respective litigants existing at the time the running of the statute was interrupted by the filing of the first suit.    The second suit must be for substantially the same cause of action,

though it need not be a literal copy of the petition dismissed. *Hudgins* v. *Crow*, 32 *Ga.* 372. It must be by the same plaintiff or his legal representative (*Moody* v. *Threlkeld*, 13 *Ga.* 55 (5)), and against all who are necessary parties defendant in the first suit. If they were parties to a joint contract, or entitled to rights one against another by way of contribution in the event the plaintiff recovered, then they or their personal representatives must all be parties to the second suit. *Ford* v. *Clark*, 75 *Ga.* 612; *White* v. *Morse*, 92 *Ga.* 246. But it has been held that, even under the Civil Code, § 3915, there is no right of contribution between joint libelors. *McCalla* v. *Shaw*, 72 *Ga.* 458; *Hunter* v. *Wakefield*, 97 *Ga.* 543. Where, therefore, the first suit was against two or more such joint tort-feasors, each of whom was jointly suable but severally liable, all of the defendants were not necessary parties to the first or the second suit. In the first action they might have been stricken by the plaintiff at any time over objection. *Western Union Tel. Co.* v. *Griffith*, 111 *Ga.* 559. The second suit might have been brought against all such former defendants, and might have been discontinued as to some after service; or the same result might have been accomplished by not pressing to have them served with process. The presence or absence of any of such defendants severally liable was a matter in which the codefendants had no legal interest. *Fisher* v. *Cook*, 23 Tex. App. 621 (3). They can not escape because others were omitted as defendants, dismissed as defendants, or sued and not served as defendants. The liability of those served has not been increased, nor have they been deprived of any right of defense by reason of the absence of the other tort-feasors. When they were served in the first suit, they were put on notice of plaintiff's intent to enforce by judicial proceedings his cause of action. By such notice they were warned that that case might be dismissed and another brought against them severally, or with only a part of the other codefendants if such could lawfully be done; and they must preserve their evidence and act accordingly.

There are few cases relating to the question of parties defendant to the second suit; but all which we have found on this subject sustain the view above indicated. The statutes of the various States differ in detail, but all are equally silent on the question here involved. The authorities all agree in the proposition that

the renewal statute is to be liberally construed. *Gordon* v. *Mc-Calla*, 73 *Ga.* 669; *Rountree* v. *Key*, 71 *Ga.* 214; Coffin *v.* Cottle, 16 Pick. 385. And this applies to parties defendant, as will appear from *Cox* v. *Berry*, 13 *Ga.* 306. A brought ejectment against B as tenant in possession. C, the landlord, was made party defendant. Being unable to prove possession in B, the plaintiff dismissed after the bar of the statute had attached. Within six months he brought a suit for the same lot against D as tenant, to which C also was a party defendant. He pleaded the statute of limitations. In answer to the proposition that the second suit was not a renewal of the first, because against a different tenant, the court said that it was certainly the same as far as the landlord, C, was concerned. " It is for the same land, in favor of the same plaintiff, and he was a party defendant to both " actions. " The act is remedial and is to be literally [liberally] construed." In Anthony Investment Co. *v.* Law, 61 Pac. 745, Law and his wife gave a note for $1,200 and coupon notes for the interest, securing the same by a mortgage. The note and coupons as well as the mortgage were sold to Waitt, payment being guaranteed by the Farmers' Company. There were subsequent transfers, and finally a suit brought to foreclose the mortgage, and the assignee of the coupons prayed for judgment against Law. The foreclosure and cross-action were both dismissed after the bar of the statute on the coupons. Subsequently a renewal action was brought on the coupons against the Laws, who raised the point that the parties were not the same as in the first suit. The court said, the plaintiff's right was not " affected by the fact that other parties were also defendants in the first action. The two actions, although not identical in form, were substantially alike, and in each case a personal judgment was sought upon the note, and upon similar grounds of liability, so far as the defendants are concerned." In Pittsburg R. *v.* Bemis, 64 Ohio St. 26, the plaintiff brought an action for false imprisonment against the railroad and the Wagner Palace Car Company. The latter demurred, and was dismissed. Later the plaintiff's case against the railroad was dismissed for want of jurisdiction. He renewed within the statutory period against the railroad company alone, in another court; and while no point was made as to the absence of one of the original defendants, the case was held to be saved by the renewal

statute.    In East Tenn. Co. *v.* Lawson, 35 S. W. 456 (3), an ac-
tion to recover 100,000 acres of land was brought against thirty
defendants, and dismissed after the bar of the statute, and again
brought under the renewal statute against one defendant severally
liable, and allowed to proceed without the presence of the other
twenty-nine defendants.    Under the Arkansas statute the plain-
tiff may commence a new action after he has suffered a nonsuit,
or his judgment has been arrested or reversed.    Under this stat-
ute suit was brought against the makers of a note, which was
nonsuited after the bar had attached.    A new suit within a year
was brought against two of the makers of the note, but omitting
other defendants who were parties to the first suit.    The Supreme
Court of Arkansas does not appear to have made any question as
to whether the makers were entitled to rights one against another
by way of contribution or otherwise, but held that the case was
saved from the bar, notwithstanding the fact that all the makers
of the note who were sued in the first action were not made par-
ties to the second, saying that the first action was commenced
against the other makers of the same note who were not sued in
the present action.    Defendants in this suit were, however, par-
ties to the first.    The question is not whether a joint liability
exists against the makers of the note, but whether a former suit
was commenced against the defendants in this suit on the same
cause of action.    State Bank *v.* Roddy, 7 Eng. (Ark.) 767.    See
also Williams *v.* Council, 4 Jones (N. C.), 206.

It may possibly be argued that these authorities lead to the
conclusion that, having sued 110 defendants in the first suit, the
plaintiff might institute 110 separate and independent actions —
one against each of the persons severally liable.    That question is
not involved in this case.    Here the second suit was against all
of the original defendants.    The fact that some were not served
does not bring about a result different from what might have
been accomplished if all had been served, and during the progress
of the case 105 had been voluntarily dismissed.

7–10.    In a case against several defendants it is often impossible
to serve each in time for the appearance term.    The right to
amend and to grant continuances reasonably necessary to bring in
those who have not been served would seem to be one of the in-
herent powers of the court which had authority in the first in-

stance to issue the process.· Civil Code, § 4047 (6). Undoubtedly on general principles a process loses its vitality after the return day, unless by virtue of the statute or of some act of the court itself the right of the officer to serve the same is extended. Sections 4991 and 4992 of the Civil Code have enlarged the power of the ministerial officer, and writs served too late for the first term are held good for the succeeding term. If the officer is unable to find the defendant or any of the defendants, he is required to make return thereof for appropriate action by the court. But if there is no service, the plaintiff can not remain inactive, and, after having been guilty of laches, ultimately move in the cause, and then claim that a suit allowed to remain passive is to be treated as having been commenced as of the time of the filing of the petition. Such result follows only when the suit is kept· alive by legal service. Civil Code, § 4973. But where the plaintiff, on discovery of the failure to serve, or of·irregularity in the process, is active to have the fault cured, the court is not without jurisdiction to make the suit effective. *Dobbins* v. *Jenkins*, 51 *Ga.* 204; *Peck* v. *LaRoche*, 86 *Ga.* 317; *Brunswick Hardware Co.* v. *Bingham*, 110 *Ga.* 526. Each of these cases recognizes that where there had been no service, the plaintiff's diligence entitled him to orders after the first term requiring the sheriff to perfect service. And in *White* v. *Davis*, 35 *Ga.* 269, it was expressly ruled that "a second original and process to perfect service on a joint defendant . . may issue by way of amendment after the appearance term." Here neither the original nor the second original process was void. The plaintiff was diligent, and the court was authorized to establish lost second originals, to cause them to be properly directed, and to permit service thereof on the non-resident defendants, requiring them to appear at the May term, 1899, of Brooks superior court. What has already been said as to perfecting service is an answer to the contention that service of the second suit must be perfected within six months. The date of the filing of the petition is to be treated as the commencement of every suit when it is followed up by legal service; and under this rule the present suit was begun within six months from the dismissal of the former, the service in 1899 being effective, by relation, to keep alive the suit filed on March 3, 1898.

,. *Judgment reversed. All the Justices concur, except Evans, J., not presiding.*