## LOGAN *et al.* *v.* YANCEY *et al.*

1. In view of the pending proceeding which was shown in the record, the claims of the plaintiffs were not barred by the statute of limitations.
2. And, under the facts appearing in the record, the court did not err in ordering the commissioners, who had been called upon in a petition to render a report of their acts and doings in the disposition of a certain estate, to make a report as prayed.

No. 4879.　JANUARY 15, 1926.

Equitable petition; intervention.　Before Judge Bell.　Fulton superior court.　April 22, 1925.

*R. R. Jackson* and *C. E. Moore*, for plaintiffs in error.

*Branch & Howard* and *B. P. Gambrell*, contra.

BECK, P. J.　On May 12, 1911, an application was made to the superior court of Fulton county by Mary J. Yancey and Annie Sullivan, for an equitable partition of certain lands, inasmuch as, because of the peculiar situation of the property and the relation of the parties, partition under statutory proceedings was impracticable. The issues in the matter were submitted to a jury, which rendered a verdict fixing the interests of the parties to the application in the property described therein; and the verdict further recites that "We find that a fair and equitable division of the lands . . can not be made by metes and bounds, . . and that the court shall appoint three discreet persons to conduct the sale under the usual regulations of a legal sale, . . and that after due advertisement, etc., of such sale, the commissioners, when appointed, shall make their return as provided by law." Upon this verdict the court rendered a decree reciting the verdict, and ordering that James L. Logan, Robert R. Jackson, and Lowndes Connally be appointed commissioners to make and conduct the sale as recommended and found by the jury, and ordering the commissioners to sell the lands under the rules and regulations provided

Limitation of Actions 37 C. J. p. 1052, n. 37.
Partition 30 Cyc. p. 276, n. 85 New.

for judicial sales, and that they make a report of their acts and doings to the court. This decree was dated December 5, 1911. On March 8, 1912, the three commissioners named made a report to the court that in compliance with the decree and order the sale had been made on terms of "one third cash and the balance in one and two years, with six per cent. interest from the date of the first payment, the commissioners to retain title until the full purchase-money is paid." Several described lots were included in the sale. The aggregate amount of the sale was $14,402.95. On April 20, 1912, the court passed an order allowing an account for expenses, reciting that the sale had been previously confirmed, and fixing the proportions to be paid to the distributees of the proceeds of the sale. So far as appears from the record, no further steps were taken in the matter until December 17, 1917, when Mrs. James Denham, formerly Annie Sullivan, filed a petition showing that she was one of the distributees of the proceeds of the sale; that the commissioners had on hand several hundred dollars from notes collected, etc.; that petitioner did not know the exact sum of money, for the reason that the commissioners refused an accounting or report, although demands had been made therefor; that the facts of the matter were peculiarly within the knowledge of the commissioners; that there were two vacant lots which had never been sold; that petitioner had repeatedly requested the commissioners to sell these vacant lots, and, although they had been in possession of the lots since 1912, they had made no effort to sell them or to wind up the estate; that the commissioners "have wholly failed and refused to take any action whatsoever in the matter above mentioned, and petitioner does not believe that they intend to take any steps whatsoever to accomplish the results above mentioned, and the only way these results can be accomplished is by the discharge of the present commissioners and the appointment of new commissioners in their stead." And her prayers were: "(a) That the commissioners be served with a copy of this petition, and that they be required to show cause why the prayers of said petition should not be granted. (b) That after a hearing, said commissioners be required to file a final report, and, upon the approval of said report, that said commissioners be discharged as such, and that new commissioners be appointed."

This petition of Mrs. Denham was served on the commissioners

personally. On March 13, 1918, the court passed the following order: "The above rule coming on to be heard, it is ordered that the commissioners, Lowndes Connally, Jas. L. Logan, and R. R. Jackson, file a final report showing the exact status of said estate, including all collections and disbursements, on or before Tuesday, March 19, 1918, at 9:30 o'clock a. m.; and at that time let them show cause why they should not be dismissed." To which was added, on March 19, 1918, the following supplementary order: "The above order and motion, upon request of Lowndes Connally, is extended to Saturday morning, March 23, 1918, at 9:30 o'clock a. m." After the date of the order last quoted, so far as appears from the record the commissioners filed no return and made no report to the court of the disposition of the funds that came into their hands as the proceeds of the sale of the property in question. Nor did the parties having an interest in the funds, who had sought the partition and sale of the lands, and who in December, 1917, had petitioned the court for a report and accounting by the commissioners, take any further steps to compel the commissioners to file a report or to pay over the proceeds of the sale, until November 13, 1924, upon which date they filed the petition in the present proceedings. In this petition, which is termed "a petition and intervention," John P. Yancey, B. A. Yancey, and Mrs. Annie Denham set forth the filing of the petition of May 12, 1911, already referred to, the decree for the sale of the lots in question, the appointment of the commissioners in accordance with the decree, and the acts and doings of the commissioners, including the surveying and division of the land and the sale of the land. They further recite the fact that the commissioners reported the bids to the court, and that the sale was confirmed by the court. It is further alleged that the commissioners "made no report or finding actually completing the sale of the lots, there being no bond for title or deed filed, or of record, showing a sale of the lots;" and that "It appears from the records that nothing has been done in connection with this action since December 23, 1912, and there has been no final report by the commissioners and no order discharging them." The petitioners recite the levy upon certain of the lots belonging to them under and by virtue of a tax fi. fa., and the sale of those lots; and they pray that the commissioners be required to show cause why they should not immediately render a final and complete ac-

counting of their actions and of the funds collected, pursuant to the order referred to above; and that such other and further relief be granted as may be in accordance with law and the principles of equity. Upon this petition an order to show cause, etc., was granted.

Respondents Jackson and Logan filed a demurrer, general in its nature, based upon the grounds that the proceedings were barred by the statute of limitations, and showed no right in petitioners for an accounting or for an order from the court "directing any other or further services on the part of respondents in connection with said partition matters, in that there is no right at law nor in equity shown to exist under the pleadings of the petitioners, authorizing the granting of the relief prayed for, in that the supposed rights of petitioners are shown to be barred at law by the statute of limitations and by the laches and neglect and abandonment of petitioners as to any equitable rights they may have heretofore had in the premises. That under the pleadings and record as appearing in the original suit for partition, petitioners are shown to have abandoned whatever right or rights they may have had, if any, and by reason of their neglect and abandonment in the premises petitioners' equities, if any, have become stale, and are therefore not available or enforceable at law nor in equity at this time." This demurrer was overruled by the court, and the defendants excepted.

We are of the opinion that the court did not err in overruling this general demurrer. The application for partition and the proceedings had, as shown above upon that application,—that is, taking of the verdict and decree on an equitable petition and the appointment of the commissioners named, together with the orders of the court taken, giving directions to the commissioners, constitute a pending proceeding in the court, and it was in no way finally disposed of, but continued to be a pending proceeding, as shown by the orders and judgments of the court at various steps to bring the matter to a conclusion. This is clearly shown by the order of April 20, 1912. This order, after reciting the confirmation of the report of the commissioners on sales made by them "in the above-stated case" (that is, the case of Mrs. Mary J. Yancey et al. v. John P. Yancey), and ordering certain costs and expenses to be paid, and further ordering that the balance of the proceeds of the

sale be divided into three parts, etc., concludes as follows: "It is further ordered that the balance of said John P. Yancey's share be held and retained by said commissioners until the further order of this court, and until the adjudication of certain other claims filed against him by intervention in this case. That the commissioners do pay to Hunds and Jordan the sum of $79.61, together with interest and costs thereon, as shown by an execution in their favor against her, dated December 8, 1911; that the balance of the interest of said Mary J. Yancey be held and retained by said commissioners until the further order of this court. That the remaining one-third interest in said proceeds be held and retained by said commissioners until the further order of this court." An order concluding with these provisions and directions makes it clear that the entire matter was retained as a pending proceeding awaiting a final judgment. This could not have been made clearer had the court expressly stated, "This matter is retained as proceedings pending in court." And that being true, the statute of limitations (if there be any statute of limitations that could be invoked by commissioners who have in their hands funds arising from the sale of an estate in which parties like these petitioners have an interest) did not begin to run against the parties interested in this estate until some judgment was taken disposing of the matter, either by dismissing it or approving the report of the commissioners filed and dismissing them. And while the commissioners may have been lulled into inaction by something that occurred, that something is not made to appear by anything brought to light in the record. And while the parties interested in this estate, that is, in the lands divided and sold, did not for several years move in the matter, they did, in December, 1917, call upon the commissioners to make their final report; that is, one of the parties filed a petition, and upon that petition an order was taken, general in its nature, which reads as follows: "Read and considered. Let the above and foregoing petition be filed, and a copy thereof, together with a copy of this order, be served upon Lowndes Connally, R. R. Jackson, and James L. Logan, and let them show cause before the judge of the superior court presiding in the motion division on the 12th day of December, 1917, at 9:30 a. m., at the court-house of said county, why the prayers of the petition should not be granted as prayed." And on March 13, 1918, the court passed another

order, which is quoted above, and which required these commissioners "to file a final report showing the exact status of said estate, including all collections and disbursements, on or before March 19, 1918."

If the commissioners had been lulled into security, this order was enough to awaken them and cause them to search for and collect and preserve any evidence which they might have had as to the disposition of the proceeds of the sale. We are therefore of the opinion that in view of the fact that the proceedings were pending in court, as we have pointed out above, the rights of the petitioners in this case were not barred. *A., K. & N. Ry. Co.* v. *Wilson,* 119 *Ga.* 781 (47 S. E. 366) ; *Piedmont Hotel Co.* v. *Henderson,* 9 *Ga. App.* 672 (72 S. E. 51) ; *Cox* v. *Strickland,* 120 *Ga.* 104 (47 S. E. 912, 1 Ann. Cas. 870). In this latter case it was said: "Statutes of limitations are based partly on the theory that non-action by a plaintiff tends to throw his adversary off guard, making him careless in the preservation of receipts, vouchers, documents, and other evidence needful for his defense. But when a suit is pending, whether it be brought with technical correctness or not, the defendant is warned to preserve his evidence."

The defendants Logan and Jackson filed a joint answer, in substance as follows: For want of sufficient information they can neither admit nor deny the allegations made in paragraphs 1 to 15 of the petition. They aver that, as shown on the face of the petition, it appears that more than twelve years have elapsed since the commencement and termination of all matters and things with which the respondents were connected in said proceedings. That they knew nothing of the litigation nor their appointment as commissioners until after they had been appointed and were informed of the appointment by an attorney of record of one or more of the petitioners for partition. That they never saw any of the pleadings, nor any of the papers, of which they have any recollection, until since having been served with the petition and rule under date of December 15, 1924. That it has been so long, their memory of what transpired is so vague and indefinite, that they find it impossible to make an intelligent answer. That their connection with the sale of the property was that of advertising the property by the posting of signs on the property to be sold, and the keeping of the same posted, and the distribution of several hundred hand-

bills showing diagrams of the property, etc. That, as they remember it, James L. Logan, one of the respondents, was a real-estate man and an auctioneer, who attended to the newspaper advertising of the property and the offering for sale and selling of the same under his appointment as commissioner; that Lowndes Connally, another commissioner, made abstracts of title, prepared and had signed all orders of the court, made the returns, had charge of the bookkeeping, bank account, check-book, the paid checks, made up the bonds for titles and deeds, and collected and disbursed all moneys in any and all sums and amounts. That respondents never at any time had charge of one penny of the proceeds of the sale of the property, all money being received and disbursed by said Connally. That a bank account was opened by Connally as custodian of the money, with the Atlanta National Bank, and he managed and disbursed all of the funds. Respondents do not know the status of that bank account. That their last acts and doings in connection with their commissionership was that of undertaking to advertise and sell certain property located on Decatur Street, and probably some on Fortress Avenue, but no offer was bid by any one; that, so far as they know, no order of court was taken authorizing or requiring them to take any further steps or perform any further services as commissioners, and with the termination of the matters above set out their relations with said matters ceased; and they deny that as commissioners or court officers they had custody or control of, or dominion over, any property described in connection with said partition proceedings, whether now sold or unsold, save and except when same was authorized and prescribed by proper order of court; and if there be such an order or orders of court in existence with which they as commissioners have not fully complied so far as was humanly possible, they deny that they have any knowledge of the same. That they kept no record of accounting in their files of any kind or character whatsoever in connection with said matters, for the reasons above stated. And respondent Jackson says that it is inequitable and unjust for petitioners to come in at this late date and call on these respondents; he has himself been a practitioner of law at the Atlanta bar and in other States, and has been employed in and has disposed of a large number of lawsuits in the trial courts and in the appellate courts, and to call on him now, after

the lapse of twelve years, to state from memory the particulars of this estate, is calling on this respondent to do and perform acts that are humanly impossible; and further says this respondent, that if petitioners should at this date suffer loss, the same is the result of their own neglect of their own interests in the premises. That respondents have at all times since the date of their appointment as commissioners been residents of the City of Atlanta, and they have at numerous times talked with one of the petitioners, to wit, Mrs. Annie Denham, and are informed and believe that Mrs. Denham is thoroughly conversant with all the details of said proceedings. . . "For further response respondents say that they have obeyed all orders of court and disbursed all moneys and property in connection with their office as commissioners in said matter according to law, and that they now have no property, money, or effects of any kind or character to be disposed of in connection with the said appointment as commissioners."

The last sentence of this answer was demurred to on the ground that it was vague and indefinite; and the court struck all of it except the words, "they now have no property, money, or effects of any kind or character to be disposed of in connection with the said appointment as commissioners." After ruling upon the demurrer, the judge passed an order requiring the commissioners named above to render a full and complete report of all their actions and doings, showing the exact status of the estate and property involved, including all collections and disbursements made. And to the granting of this order the respondents excepted. We are of the opinion that, notwithstanding the fact there was no formal traverse of this answer, the court did not err in requiring the respondents to make a report of their actions and doings showing the status of the estate.

*Judgment affirmed. All the Justices concur.*