22725. CITY OF ROME *v.* SOUTHERN RAILWAY CO.

Decided September 6, 1933.

*Leon Covington, Wright & Covington,* for plaintiff in error.
*Maddox, Matthews & Owens,* contra.

MacIntyre, J.  The Southern Railway Company filed its petition in the superior court of Floyd county against the city of Rome, averring that Mrs. Mollie Autry had procured a joint verdict and a joint judgment for $7000 in an action brought by her in said court to recover damages from plaintiff and defendant for her son's death, resulting from the running of an automobile in which he was riding, into a concealed hole located on a street of said city and the right of way of said railway company; that the execution based upon said verdict and judgment was levied on certain property of the railway company; that in order to protect its property, plaintiff paid off said judgment in full; and that the railway company was "legally and equitably entitled to contribution from said city of Rome to the extent of one half of the amount so paid by it," with interest thereon from November 13, 1928.  Attached to the petition as an exhibit was a copy of the following writing, dated November 13, 1928, signed by Mrs. Autry and her attorneys, and entered upon the fi. fa.:  "Received of Southern Railway Company the sum of $8680.20 in full payment of the principal, interest to this date, and cost due on the within execution, and in consideration thereof said execution, with all of my right, title and interest therein, is hereby transferred and assigned to said Southern Railway Company, one of the codefendants named in said execution."

It appears from the copy of the petition in Mrs. Autry's damage suit, attached to the petition in the instant case as an exhibit, that the hole into which the automobile in which young Autry was rid-

ing ran, was "in Gibson street, and on the right of way of the Southern Railway Company," in Rome, Georgia, and that said hole was concealed from view by vines and other growth. Paragraph 32 of Mrs. Autry's petition avers that "the allowing of said described hole in said street . . constituted a nuisance on the part of the city of Rome and the Southern Railway Company, and the permitting and allowing of said hole to remain in said street of the city of Rome and on the right of way of the Southern Railway Company . . was gross negligence on the part of the city of Rome, and of the Southern Railway Company; and the failure to protect the public from falling into said hole by not erecting guards or rails around said hole was negligence on the part of the city of Rome and the Southern Railway Company; and the son of your petitioner having fallen into said hole, and having been killed under the circumstances aforesaid described, renders the city of Rome and the Southern Railway Company liable to your petitioner in damages. . . " The prayer of Mrs. Autry's petition is that she have judgment against the said city of Rome and the Southern Railway Company in the sum aforesaid.

The city of Rome demurred to the petition, (1) Because it "sets forth no cause of action. . . " (2) Because, "under the allegations of said petition, plaintiff was a joint tort-feasor with defendant, and, under the law, plaintiff would not be entitled to a recovery of any sum from defendant." (3) Because "plaintiff's petition discloses that the cause out of which plaintiff's alleged right to contribution arose has already gone to judgment against plaintiff and defendant, and should plaintiff be entitled to contribution from defendant for the amount sued for, or for any other sum, there could be no necessity for the present suit for the enforcement of plaintiff's rights against defendant, said cause being in judgment, and plaintiff having a remedy on said judgment under the law."

A complete history of the facts leading up to the bringing of the instant suit is given in *Autry* v. *So. Ry. Co.*, 167 *Ga.* 136 (144 S. E. 741). The real purpose of the equitable proceeding in that case, brought by the Southern Railway Company against Mrs. Autry, was to procure contribution from the city of Rome in half of the amount of the judgment it had paid off in Mrs. Autry's damage suit. The Supreme Court held that it did not lie in the mouth of the Southern Railway Company to claim contribution when it

had paid nothing on the alleged joint obligation. In this connection the court said: "It follows that the petition does not make a case for contribution, even if it would be entitled to it if it had paid off the joint judgment or a greater portion thereof than it is liable for. This renders it unnecessary for us to determine whether petitioner would be entitled to contribution in the event it pays off the joint judgment in full, or more than it is bound to pay as between it and the city of Rome." In the fifth division of the opinion the court said: "If petitioner is entitled to contribution from the city of Rome, it has an ample remedy at law by which this right can be enforced. Petitioner can have an execution issue on the joint judgment already entered, pay the same off, and have payment by it entered on the fi. fa. to enforce said judgment, and thus have full power to control and use said fi. fa. against its codefendant, if the latter is liable for contribution. Civil Code (1910), § 5971. In this way the rights of the plaintiff in fi. fa. will be respected and enforced, and the right of the defendant to contribution from its codefendant can be enforced, if such liability exists." It thus appears that the Supreme Court carefully avoided deciding whether or not an action for contribution would lie if the railway company had paid off the amount due on the joint judgment and execution.

In the first place, we are not impressed with the soundness of the contention of counsel for defendant in error that the original tort action became a contract of record under the Civil Code (1910), § 4218, and was so merged into the judgment rendered therein that, in determining the right of contribution in the instant case, the judgment, or "contract of record," alone must be considered, and the fact that the plaintiff and defendant were joint tort-feasors must be forgotten. We do not think that any of the following cases, cited by counsel for defendant in error, supports this contention: *Howell* v. *Shands*, 35 *Ga.* 66, 72; *Williams* v. *Merritt*, 109 *Ga.* 213, 216 (34 S. E. 312); *Underwood* v. *Underwood*, 139 *Ga.* 241 (77 S. E. 46, L. R. A. 1918A, 1). Granting that a "contract of record" "operates as an estoppel, and is conclusive between the parties," and that it "effects, or works, a merger of the original cause of action," and that "the doctrine of merger holds not only where the original action was founded upon contract, but where it was founded upon a tort for wrong, independent of contract" (*Howell* v. *Shands*,

supra), we are satisfied that neither the doctrine of merger nor the doctrine of estoppel goes to the extent, in a case like the one at bar, of wiping out the fact that the original damage suit was brought against joint tort-feasors. In this connection we quote from *Dent* v. *King*, 1 *Ga.* 200, as follows: "A judgment is the highest evidence of the defendant's joint indebtedness; but not conclusive of the right of the one having paid it, to receive contribution. It is not conclusive that the defendants are in aequali jure; it is only prima facie evidence of that right, and of that position. The principle of contribution is equality in bearing a common burden, which may depend upon the circumstances and relations of the parties anterior to the judgment against them." See also *Camp* v. *Simmons*, 62 *Ga.* 73, 85. In this connection it may not be amiss to quote as follows from the headnote of *McAfee* v. *Covington*, 71 *Ga.* 272 (51 Am. R. 263): "A judgment rendered in an action for a tort, growing out of the wrongful conversion of personal property, is not a contract within the meaning of that provision of the Federal constitution which forbids a State to pass any law impairing the obligation of a contract; *aliter*, if the judgment were founded upon a contract."

At common law, one joint tort-feasor is not entitled to contribution from another who has paid off the full amount of the joint judgment against them. *Dent* v. *King*, 1 *Ga.* 200, 203 (44 Am. D. 638); *Haupt* v. *Mills*, 4 *Ga.* 543, 557; *W. & A. R.* v. *Atlanta*, 74 *Ga.* 774 (6); *Chattahoochee Brick Co.* v. *Braswell*, 92 *Ga.* 631 (18 S. E. 1015). This rule of the common law is still of force in Georgia, except in so far as it has been modified by §§ 4512 and 4513 of the Civil Code of 1910. *Mashburn* v. *Dannenberg Co.*, 117 *Ga.* 567, 582 (44 S. E. 97). *Chattahoochee Brick Co.* v. *Braswell*, supra. Section 4512 of the Civil Code reads: "Where several trespassers are sued jointly, the plaintiff may recover, against all, damages for the greatest injury done by either. But the jury may, in their verdict, specify the particular damages to be recovered of each, and judgment in such case must be entered severally." Section 4513 is as follows: "If judgment is entered jointly against several trespassers, and is paid off by one, the others shall be liable to him for contribution." Counsel for defendant in error contend that the word "trespassers," as used in the foregoing code sections is equivalent to the word "tort-feasors," and, therefore, that the

494

Southern Railway Company is entitled to contribution under the foregoing sections. To sustain this contention, counsel cite *Cox v. Strickland*, 120 *Ga.* 104 (47 S. E. 912, 1 Ann. Cas. 870), and similar cases, holding that the constitutional provision (Civil Code (1910), § 6541) that "suits against joint obligors, joint promisors, copartners, or joint trespassers, residing in different counties, may be tried in either county," applies to "joint tort-feasors in a libel case." After stating that "undoubtedly the word 'trespassers' frequently, even generally, conveys the idea of force," the court calls attention to the fact that "it also includes in its largest sense any transgression or any offense against the law of nature, of society, or of the country . . whether it relates to a man's person or his property." We next quote from the decision in the *Cox* case: "And that a libel is a trespass within the language of the constitution is evident when it is considered that the organic law is to be construed liberally, and so as to accomplish the purpose of the people in convention assembled. There is a strong presumption that the words were not intended to be given any narrow or purely technical meaning in a chapter which was dealing with the general subject of venue and defining where all suits against joint defendants could be instituted. The constitution provided where all such suits should be brought in equity cases; where in common-law cases if there was a joint liability under a contract; and evidently intended to declare what might be the venue in suits where persons were jointly liable for a tort. Otherwise there would be a hiatus. If defendants' contention be correct, there would be a right to bring a joint action against those who are alleged to have been guilty of a joint libel, and yet there would be no way of enforcing this right if they resided in different counties." If the legislators had intended to exempt all tort-feasors from the common law rule, they could easily have so framed the law as to express that intention; and we do not think that this rule should be held to be changed, or entirely abolished, unless the legislature clearly and unequivocally evinces its intention to change or abolish it. There is no such compelling reason to conclude that the word "trespassers" is used in its broadest sense in §§ 4512, 4513, as there is for concluding that it was so used in the constitutional provision considered in the *Cox* case. Neither are we impressed with the soundness of counsel's contention that because the words "tort"

and "trespass" are used in the same sense in section 4503 of the Civil Code (1910), they are so used in §§ 4512 and 4513.

It has been stated many times that §§ 4512 and 4513 are applicable to trespasses on property, and not to personal torts. See *Hunter* v. *Wakefield*, 97 *Ga.* 543, 545 (25 S. E. 347, 54 Am. St. R. 438) ; *McCalla* v. *Shaw*, 72 *Ga.* 458, 460; *Cox* v. *Strickland, Mashburn* v. *Dannenberg Co.*, supra. It appears from the petition in the case at bar, and the exhibit of the original damage suit attached thereto, that the petition charges that the acts of negligence causing the death of Mrs. Autry's son were jointly and concurrently participated in by both the Southern Railway Company and the city of Rome—that is to say, that the defendants were really joint tort-feasors; and, this being true, the premises considered, we hold that the petition of the Southern Railway Company fails to set out a case for contribution against the city of Rome. Whether or not the Southern Railway Company could have enforced its claim for contribution under section 5971 of the Civil Code, as suggested in *Autry* v. *So. Ry. Co.*, supra, it is not necessary to discuss, since no such method was followed.

*Judgment reversed. Broyles, C. J., and Guerry, J., concur.*