**Michael AUSTIN, Petitioner–Appellant,**

v.

**UNITED STATES PAROLE COMMIS-
SION, Respondent–Appellee.**

**Docket No. 04–2481–AG.**

United States Court of Appeals,
Second Circuit.

Argued March 15, 2005.

Decided April 19, 2006.

E. Lawrence Barcella, Jr. Paul, Hastings, Janofsky & Walker LLP, Washington, D.C., for Petitioner–Appellant.

Rockne J. Chickinell, General Counsel, Douglas W. Thiessen, Assistant General Counsel, United States Parole Commission, Chevy Chase, Maryland, for Respondent–Appellee.

Before: STRAUB and WESLEY,
Circuit Judges, and SESSIONS, District
Judge.*

SESSIONS III, District Judge.

Petitioner Michael Austin, a transfer treaty prisoner under 18 U.S.C. § 4106A (2004), appeals from the United States Parole Commission's determination that he will serve a life sentence without the possibility of release. Because the Parole Commission erred in concluding that it was required to follow the United States Sentencing Guidelines in setting a release date, we remand to the Parole Commission for re-determination of a release date in accordance with this opinion.

### Background

Austin, a United States citizen, was convicted of murder by a United Kingdom court in 1997. Under United Kingdom law, a person convicted of murder automatically receives a sentence of life imprisonment. Murder (Abolition of Death Penalty) Act, 1965, c. 71, § 1. When the United Kingdom's Murder Act was passed it was understood that "imprisonment for life" rarely meant that a prisoner would remain in prison for the rest of his life, but would serve a specified term of impris-

---

* The Honorable William K. Sessions III, of the United States District Court for the District of Vermont, sitting by designation.

onment, termed the "tariff," and be released on parole, known as release "on licence," when appropriate. *See R. (Anderson) v. Sec'y of State for the Home Dep't* [2002] UKHL 46, [2003] 1 A.C. 837, 842 (appeal taken from Eng.). Once a convicted murderer serves his tariff term his case is referred to the Parole Board and he is released "on licence" unless the Board concludes that continued confinement is necessary for the protection of the public. *See id.* [2003] 120 Ga. 104, 47 S.E. 912, 1 A.C. at 875. A tariff-expired mandatory life sentence prisoner has the right to release, no matter how heinous his offense of conviction, if he is judged to present no continuing threat to public safety. *R. (Roberts) v. Parole Bd.* [2005] UKHL 45, [2005] 2 A.C. 738, 750.

A term of actual imprisonment can be imposed that extends to the entire life of the individual, however, if the circumstances of the murder are particularly atrocious. *See Anderson,* [2003] 1 A.C. at 874. A term of actual imprisonment that extends for the life of the individual is known as a "whole life tariff." *See, e.g., Sec'y of State for the Home Dep't ex parte Hindley,* [2001] 1 A.C. 410, 414 (H.L.) (appeal taken from Eng.). A British "mandatory life sentence" does not mean imprisonment for life unless a whole life tariff is imposed. *See Stafford v. United Kingdom,* 35 Eur. Ct. H.R. (2002) 1121, 1143–44, *quoted in Anderson,* [2003] 1 A.C. at 878–79 (mandatory life sentence does not impose imprisonment for life as punishment).

Pursuant to the sentencing procedure in place in 1997, the trial judge advised the Lord Chief Justice on an appropriate tariff for Austin, taking into account the circumstances of the offense, his dangerousness and his likelihood to re-offend, among other factors. The Lord Chief Justice reviewed the trial judge's recommendation of not less than twenty years to serve, and in turn recommended to the Home Secretary that Austin receive a term of twenty-four years. The Home Secretary, finding no mitigating circumstances in Austin's case, fixed his tariff at twenty-four years to serve in prison.[1]

In 1998 Austin requested transfer to a prison in the United States. Pursuant to the Council of Europe Convention on the Transfer of Sentenced Persons, *opened for signature* Mar. 21, 1983, 35 U.S.T. 2867, 1496 U.N.T.S. 92 ("Treaty"), the United States requested and the United Kingdom consented to the transfer. Austin was returned to the United States on March 15, 2000.

The United States Parole Commission bears the responsibility for determining a release date for transferred prisoners, taking into consideration any recommendation of the United States Probation Service, including any recommendation as to the applicable sentencing guideline range, and any documents provided by the transferring country. 18 U.S.C.A. § 4106A(b)(1) (West 2000). A United States Probation Officer prepared a Treaty Transfer Post Sentence Investigation Report in late 2000, applying the United States Sentencing Guidelines then in effect. The officer used a base offense level of 43 for first degree murder, with no adjustments in level, and a criminal history category of I. The guideline range for level 43, category I, is life imprisonment.

Following a hearing held on January 23, 2003, an examiner for the Parole Commission recommended that the Commission

---

1. The procedure has since been amended to eliminate the Home Secretary's involvement in determining the tariff, reserving that function to the judicial, not the executive branch. *Anderson,* [2003] 120 Ga. 104, 47 S.E. 912, 1 A.C. at 882.

order that Austin remain in prison for life, followed by a 60–month period of supervised release. As grounds for her recommendation she stated that the Parole Commission was required to apply the sentencing guidelines and to impose the sentence called for by the guidelines, absent grounds for departure. She found no grounds for departure. The hearing examiner also concluded that the recommended sentence did not violate the terms of the Treaty.

On March 18, 2004, the Parole Commission completed a worksheet for transfer treaty determination wherein it also calculated Austin's total offense level under the Sentencing Guidelines at 43, and his criminal history category at I, for a guideline range of life imprisonment. Applying this calculation, and apparently adopting the hearing examiner's recommendations, the Commission ordered that Austin serve a life sentence of imprisonment without the possibility of release, to be followed by a sixty-month term of supervised release.

On appeal, Austin claims that the imposition of a sentence of life imprisonment without the possibility of release violates the terms of the Treaty, and that the Parole Commission's failure to supply any reasons for its determination is reversible error. Austin also challenges the Commission's failure to grant Austin a downward departure for substantial assistance to and cooperation with law enforcement authorities.

## Discussion

### I. The Prisoner Transfer Statutes

Chapter 306 of Title 18, United States Code, governs transfers of offenders to or from foreign countries. 18 U.S.C.A. §§ 4100–4115 (West 2000 & Supp.2005). Section 4106A provides that, for offenses committed after November 1, 1987,[2] *see* 18 U.S.C.A. § 4106A (c), the United States Parole Commission must "determine a release date and a period and conditions of supervised release for an offender transferred to the United States to serve a sentence of imprisonment, as though the offender were convicted in a United States district court of a similar offense." § 4106A(b)(1)(A). The Parole Commission must consider "any recommendation of the United States Probation Service, including any recommendation as to the applicable guideline range," as well as any documents provided by the transferring state. § 4106A(b)(1)(B)(i), (B)(ii). The combined periods of imprisonment and supervised release may not exceed the term of imprisonment imposed by the sentencing state. § 4106A(b)(1)(C). In effect, § 4106A gives the Parole Commission the authority and the responsibility of a district court at sentencing, although its ability to set a release date in accordance with the Guideline range for a similar offense under the U.S.Code is constrained by the prohibition against lengthening the term of imprisonment imposed by the sentencing state. *See Trevino–Casares v. U.S. Parole Comm'n,* 992 F.2d 1068, 1069, 1072 (10th Cir.1993); *see also Cannon v. U.S. Dep't of Justice,* 973 F.2d 1190, 1197 (5th Cir.1992) (Commission is not free to vary total sentence of treaty prisoner); *Thorpe v. U.S. Parole Comm'n,* 902 F.2d 291, 292 (5th Cir.1990) (per curiam) (offender's obligation to the Government has already been established by sentence imposed by foreign court).

The transfer provisions of Chapter 306 apply "only when a treaty providing for such transfer is in force," and apply "to transfers of offenders ... from a foreign country pursuant to such a treaty." 18

---

**2.** The murder of which Austin was convicted was committed in March 1992.

U.S.C.A. § 4100(a). The laws of the United States apply to offenders transferred to the United States, unless the treaty or another provision of Chapter 306 provides otherwise. *Id.* § 4103. The Council of Europe Convention on the Transfer of Sentenced Persons is the treaty in force that provides for the transfer of offenders from the United Kingdom to this country.

## II. The Council of Europe Convention on the Transfer of Sentenced Persons

The Treaty defines a sentence as "any punishment or measure involving deprivation of liberty ordered by a court for a limited or unlimited period of time on account of a criminal offence." Treaty, art. 1, ¶ a, 1496 U.N.T.S. at 93; *see also Bishop v. Reno,* 210 F.3d 1295, 1300 (11th Cir.2000) ("sentence" under the Treaty means imprisonment for a criminal conviction). The Treaty provides for two ways of enforcing a sentence once a prisoner is transferred: the administering state may continue the enforcement of the original sentence, or it may convert the sentence, thereby substituting for the sanction imposed in the sentencing state a sanction prescribed by the law of the administering state. Treaty, art. 9–11, 1496 U.N.T.S. at 95–96; *see also Bishop,* 210 F.3d at 1300 ("The distinction between continued enforcement and conversion of sentence ... is that the former continues to enforce the sanction imposed in the sentencing state ... while the latter converts the sentence into a sanction of the administering state") (internal quotation marks omitted).

In Austin's case, the United States elected to continue the enforcement of the original sentence. In cases of continued enforcement, the administering state is "bound by the legal nature and duration of the sentence as determined by the sentencing state." Treaty, art. 10 ¶ 1, 1496 U.N.T.S. at 96. If the original sentence is incompatible with the law of the administering state, the administering state may not substitute its own sanction, but may adapt the sentence to a punishment prescribed by its own law for a similar offense, as long as the adaptation does "not aggravate, by its nature or duration, the sanction imposed in the sentencing state." Treaty, art. 10 ¶ 2.

## III. Appellate Review of a Release Date Set by the Parole Commission

Section 4106A(b)(1)(A) authorizes the Parole Commission to determine a release date for an offender transferred to the United States as though the offender were convicted in a United States district court of a similar offense. § 4106A(b)(1)(A). Review of a release date determination by the Parole Commission for a treaty transfer prisoner is governed by § 4106A(b)(2)(B), which provides: "[t]he court of appeals shall decide and dispose of the appeal in accordance with section 3742 of this title as though the determination appealed had been a sentence imposed by a United States district court". § 4106A(b)(2)(B).

Pursuant to § 3742, we have jurisdiction to review a sentence that "was imposed in violation of law" for reasonableness. 18 U.S.C.A. § 3742(a)(1) (West 2000); *United States v. Fernandez,* 443 F.3d 19, 2006 WL 851670, at *5 (2d Cir. Apr.3, 2006). Our review involves an assessment "not only of the sentence itself, but also of the procedure employed in arriving at the sentence." *Id.* at *6. If a district court committed a procedural error in arriving at a sentence, then the sentence is unreasonable, and therefore, is one "imposed in violation of law." *See id.* at *5.

Because Austin's punishment derives from his violation of English law, he does not enjoy the Sixth Amendment right to trial by jury impaired by the mandatory application of the United States Sentencing Guidelines. *See United States v. Booker*, 543 U.S. 220, 231–33, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). The Parole Commission, however, was never bound by the Guidelines, and is only required to "consider ... the applicable guideline range"—the standard now familiar to every district court. *Compare* 18 U.S.C.A. § 4106A(b)(1)(B), *with* 18 U.S.C.A. § 3553(a), *and United States v. Crosby*, 397 F.3d 103, 111 (2d Cir.2005) ("[S]entencing judges remain under ... the continuing duty to 'consider' [the Guidelines], along with the other factors listed in § 3553(a)."). Our post-*Booker* jurisprudence, therefore, provides a useful analogy for determining whether Austin's sentence was "imposed in violation of law."

A district court's mandatory application of the Guidelines is one type of procedural error that may occur post-*Booker*. *See Crosby*, 397 F.3d at 114–15. In this case, the hearing examiner stated that "[t]he Commission ... has no discretion to set a release date without applying the sentencing guidelines unless there is a ground for departure[;] ... no departure is warranted in this case." Transfer Treaty Hr'g Summ., p. 8. In adopting the examiner's conclusion, the Commission committed procedural error by applying the applicable Guidelines range mandatorily. *See Crosby*, 397 F.3d at 114–15.

The Parole Commission has the discretion, and the statutory duty, to set any release date from incarceration provided that it has considered the applicable sentencing guidelines for the equivalent offense,[3] considered all of the factors listed in 18 U.S.C. § 3553(a), supplied reasons for its decision, and has not exceeded the term of imprisonment imposed by the foreign court. 18 U.S.C.A. § 4106A(b)(1)(B), (C); *see Cannon v. United States Dep't of Justice*, 973 F.2d 1190, 1195 (5th Cir.1992). We therefore remand the case for the Parole Commission to set an appropriate release date in accordance with § 4106A(b) and § 3553(a). If the Parole Commission concludes that a non-Guidelines sentence is appropriate, that determination will be reviewed for reasonableness should it return to our Circuit.

### Conclusion

The case is remanded for further proceedings consistent with this opinion.

---

3. We note that applying a three-level reduction for acceptance of responsibility under the Guidelines in effect at the time of Austin's transfer treaty hearing produces a Guideline sentence range of 292 to 365 months. Although the hearing examiner made preliminary findings that a two-level adjustment for acceptance of responsibility was offset by a two-level adjustment for aggravating role, Transfer Treaty Hr'g Summ., p. 3, the record does not reflect if the Parole Commission considered whether Austin qualified for the three-level reduction. *See United States v. Leung*, 360 F.3d 62, 70 (2d Cir.2004).