05-5965-cr (L), 06-0949-cr (con)
United States v. Dhafir

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

————————————

August Term, 2008

(Argued: August 28, 2008                              Decided: August 18, 2009)

Docket Nos. 05-5965-cr, 06-0949-cr

————————————

UNITED STATES OF AMERICA,

*Appellee,*

— v .—

RAFIL DHAFIR,

*Defendant-Appellant.*

————————————

Before:        CALABRESI AND B.D. PARKER, *Circuit Judges.**

————————————

Appeal from a judgment of conviction in the United States District Court for the Northern District of New York (Mordue, *J.*) on various counts relating to the fraudulent operation of a charity and improper billings to Medicare.

The portion of the sentence imposing incarceration is VACATED and REMANDED.

————————————

*        The Honorable Sonia Sotomayor, originally a member of this panel, was elevated to the Supreme Court on August 8, 2009.  The two remaining members of the panel, who are in agreement, have determined this matter.  *See* 28 U.S.C. § 46(d); Local Rule 0.14(2); *United States v. Desimone*, 140 F.3d 457 (2d Cir. 1998).

PETER GOLDBERGER (Pamela A. Wilk, *on the brief*), Ardmore, PA; L. Barrett Boss, Nicole Angarella, Cozen O'Connor, P.C., Washington, DC, *for Defendant-Appellant.*

MICHAEL C. OLMSTED, Assistant United States Attorney (Brenda K. Sannes, Stephen C. Green, Assistant United States Attorneys, *on the brief*), *for* Andrew T. Baxter, Acting United States Attorney for the Northern District of New York, Syracuse, NY, *for Appellee.*

_____

BARRINGTON D. PARKER, *Circuit Judge*:

Rafil Dhafir appeals from a judgment of conviction in the United States District Court for the Northern District of New York (Mordue, *J.*). Dhafir was convicted on numerous counts arising from his operation of a fraudulent charity and improper Medicare billings. The district court sentenced him principally to 264 months imprisonment and ordered restitution to various victims of the fraud. In this opinion we consider Dhafir's contention that the district court incorrectly calculated his Sentencing Guidelines range. Because we conclude that the district court overlooked an alternate means of determining which sentencing provision under U.S.S.G. § 2S1.1(a) applied to Dhafir's charges, we VACATE and REMAND the incarceration portion of Dhafir's sentence.

**BACKGROUND**

The charges against Dhafir largely arise from his operation of a fraudulent charity that illegally sent money to Iraq. After a long government investigation, Dhafir was charged in February of 2003 with conspiring under 18 U.S.C. § 371 to violate the International Emergency Economic Powers Act (IEEPA), 50 U.S.C. §§ 1701-06, specifically, by conspiring to violate the Iraqi Sanctions Regulations, 31 C.F.R. § 575, which were issued pursuant to the IEEPA. Dhafir

was also charged with promotional money laundering, in violation of 18 U.S.C. § 1956(a)(2)(A), which provides that "[w]hoever transports, transmits, or transfers . . . a monetary instrument or funds from a place in the United States to or through a place outside the United States . . . with the intent to promote the carrying on of specified unlawful activity" is guilty of a federal offense. Dhafir was also charged, *inter alia*, with tax evasion, a tax-related conspiracy charge, a visa fraud charge, and 24 counts of health care fraud.

After a sixteen-week trial, a jury convicted Dhafir on all counts except for one of the money laundering charges. U.S.S.G. § 2S1.1(a) provides that the base offense level for money laundering is:

> (1) The offense level for the underlying offense from which the laundered funds were derived, if (A) the defendant committed the underlying offense . . .; and (B) the offense level for that offense can be determined; or
>
> (2) 8 plus the number of offense levels from the table in § 2B1.1 (Theft, Property Destruction, and Fraud) corresponding to the value of the laundered funds, otherwise.

At sentencing, the parties and probation service disagreed on which section of the Guidelines applied to the money laundering counts. Dhafir argued for application of § 2S1.1(a)(1), which would have resulted in a lower Guidelines range, while the government argued for § 2S1.1(a)(2).

The district court agreed with the government that the money laundering charges should be calculated and grouped according to § 2S1.1(a)(2). "Here," the district court wrote, "the unlawful activity charged in the money laundering counts is the transfer of funds in a manner intended to promote IEEPA violations. The counts are not based on the source of the funds but rather on the offense which their transfer was intended to promote." The court found that § 2S1.1(a)(1) "which establishes the base offense level with reference to the underlying offense <u>from which the laundered funds were derived</u>, is inapplicable. . . Accordingly, the Court declines to read

3

subsection (a)(1) as requiring it to refer to the source of funds to determine the base offense level in a case such as this, where the defendant is convicted of transferring the funds to promote an illegal activity other than that from which the laundered funds were derived." The court further observed that "applying subsection (a)(1) in the case at bar would in effect reward defendant for using criminally-derived monies because it results in a lower base offense level than if defendant had used legally-obtained monies (which would undisputedly result in the application of subsection (a)(2))." Ultimately, the court denied a downward departure but imposed a below-Guidelines sentence of twenty-two years.

On appeal, Dhafir challenges his conviction, sentence, and restitution on several grounds. In this opinion we focus only on his claim that the district court erred in applying § 2S1.1(a)(2) rather than § 2S1.1(a)(1).[1]

**DISCUSSION**

We are guided in our analysis, as we usually are in sentencing cases, by *United States v. Booker,* 543 U.S. 220 (2005), and its progeny. In *Booker*, the Supreme Court held that the Sentencing Guidelines are "effectively advisory," and that a district judge has discretion to choose to impose either a Guidelines or a non-Guidelines sentence. *Id.* at 245. Subsequently, in *Gall v. United States*, 128 S.Ct. 586 (2007), the Court clarified that "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Id.* at 596 (citations omitted). The Court further explained that "[t]he

---

[1] We resolve the remaining issues raised in this appeal in a summary order filed contemporaneously with this opinion.

Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Id.* The Court has since added that "as a general matter, courts may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines." *Kimbrough v. United States,*128 S.Ct 558, 570 (2007) (internal quotation marks omitted).

When reviewing, as here, the district court's application of the Sentencing Guidelines to facts, a sentencing determination concerning primarily an issue of fact warrants "clearly erroneous" review, whereas a determination concerning primarily an issue of law receives *de novo* review. *See United States v. Vasquez*, 389 F.3d 65, 75 (2d Cir. 2004). The district court's grouping analysis, which considered the elements of promotional money laundering and the import of those elements for the grouping calculation, essentially raises questions of law. Therefore, we review the district court's decision *de novo. Id.* at 77.

Dhafir argues that the sentence for the money laundering charges should have been calculated under § 2S1.1(a)(1) and therefore grouped with the fraud and tax offenses, because he used the proceeds of those crimes to conduct the money laundering. The district court, he contends, ignored the "plain language" of 2S1.1(a)(1), which requires that when the defendant, as here, committed the underlying offense, the base offense level is calculated according to that underlying offense. Dhafir argues that "[t]he Guideline does not ask whether the defendant has been convicted of a money laundering offense with a 'proceeds' element. It simply asks whether the laundered funds were the proceeds of an offense the defendant committed. Here, based on the jury's verdicts and the government's own theory of the case, the answer to that basic question was

5

'yes.'" Even though the district court gave Dhafir a below-guidelines sentence, Dhafir maintains that "the court started from an artificially high baseline."[2]

The government counters that the court properly applied § 2S1.1(a)(2) because there was no underlying offense from which the laundered money was derived. This analysis, they contend, is appropriate because "Dhafir's argument that the court should have used the money laundering guideline that calibrates the offense level to the 'underlying offense' would have made no sense on these facts, and would have reduced Dhafir's offense level by virtue of the fact that he was convicted of additional crimes." Gov't Br. at 37.

We note that in this case, the government argued at trial that the source of funds for the money laundering offenses was the underlying fraud and tax offenses, but at sentencing, the government contended that the funds came from other sources. We have not yet addressed the application of U.S.S.G. § 2S1.1 in a case like this one, where it is unclear whether a defendant used the proceeds of his fraud crimes to engage in promotional money laundering. Given these ambiguities and the contradictory positions the government took at trial and at sentencing, we believe the judge overlooked another permissible approach under our post-*Booker* jurisprudence. In *United States v. Crosby,* 397 F.3d 103, 112 (2d Cir. 2005), we stated that "precise calculation of the applicable Guidelines range may not be necessary [in making a sentencing determination]. . . . [S]ituations may arise where either of two Guidelines ranges, whether or not adjacent, is applicable, but the sentencing judge, having complied with section 3553(a), makes a decision to impose a non-Guidelines sentence, regardless of which of the two ranges applies." "This leeway,"

---

[2] Using Dhafir's method, his base offense level would have been 37; his offense level was ultimately calculated to be 41.

we wrote, "should be useful to sentencing judges in some cases to avoid the need to resolve all of the factual issues necessary to make precise determinations of some complicated matters, for example, determination of monetary loss." *Id*; *see also United States v. Cavera*, 550 F.3d 180, 190 (2d Cir. 2008) (en banc) (stating that omission of the Guidelines calculation may sometimes be justified, citing *Crosby*); *see also Cavera*, 550 F.3d at 200 n.4 (Raggi, *J.*, concurring) (explicitly reaffirming *Crosby*'s approach in this regard).

The factual ambiguities in this case present just these circumstances. The district court was correct that choosing § 2S1.1(a)(2) rather than § 2S1.1(a)(1) would avoid the odd result that Dhafir would receive a lower sentence if the laundered money was "criminally-derived" than if it was "legally-obtained." But post-*Booker*, there was no need for the district judge to pigeonhole the case into § 2S1.1(a)(2) to avoid an illogical result and run the risk of setting a bad precedent; indeed, there was no need for him to choose between the two at all. We reiterate here that the district court is not bound in ambiguous circumstances such as these to choose one Guidelines range in particular, and is free to take the more flexible – and often, more direct – approach of arriving at a more appropriate sentence outside the Guidelines. In light of *Booker*, the judge could simply look at all of the facts, take both suggestions into account, consider the § 3553(a) factors, and come up with a "hybrid" approach if he so chose.

We do not hold that the district court erred in determining that the appropriate Guidelines provision was § 2S1.1(a)(2) or that the sentence was unreasonable; we remand only to permit the district court to consider whether a different sentence would result from the application of this more flexible approach.

7

Therefore, for the foregoing reasons, we VACATE and REMAND for resentencing consistent with this opinion.