12-5021-cr
Jordan v. U.S. Parole Comm'n

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 21st day of January, two thousand fourteen.

PRESENT:   RALPH K. WINTER,
           GUIDO CALABRESI,
           REENA RAGGI,
                    *Circuit Judges*.

------------------------------------------------------------------------------

FAWN JORDAN,
                    *Petitioner-Appellant*,

                    v.                              No. 12-5021-cr

UNITED STATES PAROLE COMMISSION,
                    *Respondent-Appellee*.

------------------------------------------------------------------------------

APPEARING FOR APPELLANT:       DARRELL B. FIELDS, of Counsel, Federal
                               Defenders of New York, Appeals Bureau, New
                               York, New York.

APPEARING FOR APPELLEE:        SHARON   A.   GERVASONI   (Rockne
                               Chickinell, General Counsel, Johanna E.
                               Markind, Assistant General Counsel, *on the
                               brief*), Assistant General Counsel, United States
                               Parole Commission, Washington, D.C.

Appeal from an order of the United States Parole Commission.

1

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the order of the United States Parole Commission entered on November 28, 2012, is AFFIRMED.

Fawn Jordan, a United States citizen and transfer treaty prisoner under 18 U.S.C. § 4106A, was convicted by the Metropolitan Court of Budapest, Hungary, of the rape of one woman on April 2, 2006, and the attempted murder of another woman on April 12, 2006, for which crimes the Hungarian tribunal sentenced him to fourteen years' imprisonment with the possibility of conditional release after ten and one-half years.[1] Jordan now appeals from an order of the United States Parole Commission entered pursuant to 18 U.S.C. § 4106A(b)(1)(A), which requires him to serve twelve years' incarceration before release on his Hungarian convictions, followed by a maximum three years of supervised release. Jordan asserts that the Parole Commission erred in calculating the United States Sentencing Guidelines applicable to his crimes to warrant a four-point enhancement for inflicting "permanent or life-threatening bodily injury" in the course of the attempted murder. U.S.S.G. § 2A2.1(b)(1)(A). He further argues that a twelve-year prison term was substantively unreasonable. We assume the parties' familiarity with the facts and the record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

---

[1] The United States and Hungary are signatories to the Council of Europe's Convention on the Transfer of Sentenced Persons, Mar. 21, 1983, 35 U.S.T. 2867, T.I.A.S. No. 10824. Pursuant to that treaty, in 2010, the United States agreed to allow Jordan to serve the balance of his Hungarian sentence in the United States.

1. <u>Standard of Review</u>

Section 4106A(b)(1)(A) authorizes the U.S. Parole Commission "to determine a release date for an offender transferred to the United States as though the offender were convicted in a United States district court of a similar offense." <u>Austin v. U.S. Parole Comm'n</u>, 448 F.3d 197, 200 (2d Cir. 2006) (citing 18 U.S.C. § 4106A(b)(1)(A)).[2] Pursuant to § 4106A(b)(2), we review such a release determination by the Parole Commission "'as though the determination appealed had been a sentence imposed by a United States district court,'" <u>id.</u> (quoting 18 U.S.C. § 4106A(b)(2)(B)), which presumably would start with a calculation of the applicable Sentencing Guidelines.

When reviewing an application of the Sentencing Guidelines, we assess factual determinations only for clear error, but we consider legal issues <u>de novo</u>. <u>See</u> <u>United States v. Dhafir</u>, 577 F.3d 411, 414 (2d Cir. 2009). In the absence of any Guidelines calculation or other procedural error, we review the substantive reasonableness of a challenged sentence under a particularly "deferential abuse-of-discretion standard." <u>Gall v. United States</u>, 552 U.S. 38, 41 (2007); <u>see</u> <u>United States v. Cavera</u>, 550 F.3d 180, 187–88 & n.5 (2d Cir. 2008) (<u>en banc</u>); <u>accord</u> <u>United States v. Kadir</u>, 718 F.3d 115, 125 (2d Cir. 2013).

---

[2] The Parole Commission determined that Jordan's release should be calculated as if he had been convicted in the United States of aggravated sexual abuse, <u>see</u> 18 U.S.C. § 2241, and attempted murder, <u>see</u> <u>id.</u> § 1113. Jordan does not dispute that these are the relevant analogous crimes.

2.    Permanent or Life-Threatening Bodily Injury Enhancement

Jordan contends that the Parole Commission erroneously calculated his Guidelines sentence to include a four-level enhancement for inflicting "permanent or life-threatening bodily injury" on his attempted murder victim rather than a two-level enhancement for causing "serious bodily injury." See U.S.S.G. § 2A2.1(b)(1)(A); (B). We disagree.

"Permanent or life-threatening bodily injury" is defined as "injury involving a substantial risk of death; loss or substantial impairment of the function of a bodily member, organ, or mental faculty that is likely to be permanent; or an obvious disfigurement that is likely to be permanent." U.S.S.G. § 1B1.1 cmt. app. n.1(J). "Serious bodily injury," by contrast, is defined in relevant part as injury "involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." Id. at n.1(L).

The facts of the attempted murder, as set forth by the Budapest Metropolitan Court, convincingly demonstrate life-threatening injury. Jordan pushed his victim into the doorway of a house and stabbed her in the abdomen. Jordan's knife penetrated the victim's "abdominal wall and ended near the lesser curvature of the stomach, through the lesser omentum in the body of pancreas," causing arterial bleeding. Appellants' App. 111. As a result, the victim "got into a fatal condition and it was only the rapid, professional and effective medical intervention, the exposing abdominal operation performed in due time, which saved her life; if this operation had not been performed, death would have occurred with the syndrome of blood-loss shock." Id. at 111–12.

4

In urging against a finding of life-threatening injury, Jordan relies on our decision in United States v. Spinelli, 352 F.3d 48 (2d Cir. 2003), which holds that the Guidelines' bodily injury sentencing enhancements "apply to the results of a crime, rather than to the circumstances of its commission." Id. at 57 (emphasis added). In Spinelli, an attempted murder victim, shot several times at close range, remarkably suffered "no internal injuries or other physical harm," notwithstanding that "one bullet lodged in her neck and another ricocheted off her back." Id. at 51. We concluded that, although the circumstances of the crime were certainly life threatening, because the result of the criminal act, i.e., the physical injury to the victim, never put her life in danger, a four-level Guidelines enhancement was unwarranted. See id.

Jordan overlooks Spinelli's focus on the injury resulting from a defendant's criminal conduct and, instead, suggests that his own conduct is somehow mitigated by the favorable results of prompt medical intervention (including major surgery), without which the victim certainly would have died. Spinelli refutes rather than supports such a construction of U.S.S.G. § 2A2.1(b)(1)(A). Indeed, more recently in United States v. Reyes, 557 F.3d 84 (2d Cir. 2009), this court recognized that "life-threatening injury" for purposes of Guidelines enhancements may encompass injury that is "life-threatening temporarily and yet [has] no long term effects following the victim's recovery." Id. at 87–88 (referencing U.S.S.G. § 2A2.2(b)(3)(C) for aggravated assault).

In sum, because the record amply supports a finding that the result of Jordan's stabbing was life-threatening injury to his victim, a four-level enhancement was correctly applied to his Guidelines calculation under U.S.S.G. § 2A2.1(b)(1)(A). As a result, we

5

need not consider the Parole Commission's further conclusions that permanent "grievous aesthetic injury" to the victim's abdomen and an "irreversible deficiency" in her finger also warranted the four-level enhancement.

3. <u>Substantive Reasonableness</u>

Jordan contends that the Parole Commission's decision requiring him to serve a total of twelve years' incarceration is substantively unreasonable because a ten-year prison term with four years' supervised release, as recommended by the United States Probation Office, would have been adequate to achieve the sentencing goals specified in 18 U.S.C. § 3553(a). Jordan "bears a heavy burden because our review of a sentence for substantive reasonableness is particularly deferential." <u>United States v. Broxmeyer</u>, 699 F.3d 265, 289 (2d Cir. 2012). Although "appellate courts have a role to play in patrolling the boundaries of reasonableness, we do so modestly, not substituting our own judgment for that of district courts, but rather, identifying as substantively unreasonable only those sentences that are so shockingly high, shockingly low, or otherwise unsupportable as a matter of law that allowing them to stand would damage the administration of justice." <u>Id.</u> (alterations, citations, and internal quotation marks omitted). In making this determination, "we 'take into account the totality of the circumstances, including the extent of any variance from the Guidelines range.'" <u>United States v. Douglas</u>, 713 F.3d 694, 700 (2d Cir. 2013) (quoting <u>Gall v. United States</u> 552 U.S. at 51). Under this demanding standard, we cannot say that Jordan's sentence was substantively unreasonable.

6

His crimes of conviction were brutal, and the totality of circumstances suggest a risk of recidivism. Nevertheless, the Commission granted Jordan a downward variance not only from the 188 to 235 months Guidelines range calculated by the Parole Commission, but also from the 14-year (168-month) sentence imposed by the Hungarian court, requiring him to serve 144 months' incarceration to ensure some post-release supervision to minimize his risk to public safety. See 18 U.S.C. § 4106A(b)(1)(C) ("The combined periods of imprisonment and supervised release . . . shall not exceed the term of imprisonment imposed by the foreign court on that offender.").

Although Jordan argues that (1) his Hungarian sentence included a possibility of conditional release after ten and one-half years, (2) a ten-year prison term with longer supervised release would have provided "sufficient deterrence" with a "greater chance of rehabilitation," (3) the adverse conditions of Hungarian imprisonment "provided sufficient punishment to deter future misconduct," (4) he has not had access to educational or rehabilitative programs while incarcerated, and (5) he wishes to reconnect with his children and lead a productive life, Appellants' Br. 29–30, none of these arguments compels a conclusion that 12-years' incarceration for the brutal rape of one victim and the attempted murder of another is so "shockingly high . . . or otherwise unsupportable as a matter of law" as to preclude deference to the Commission's decision. United States v. Broxmeyer, 699 F.3d at 289; see also United States v. Jones, 531 F.3d 163, 174 (2d Cir. 2008) (recognizing broad range of substantively reasonable sentences). In sum, Jordan's substantive reasonableness challenge is meritless.

7

We have considered Jordan's remaining arguments and conclude that they are without merit.  The judgment of the district court is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court